FOURTH NATIONAL BANK OF BOSTON *vs*. LURA F. MEAD, executrix.
WINTHROP NATIONAL BANK OF BOSTON *vs*. SAME.

Middlesex.   November 14, 1913. — February 26, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Bills and Notes,* Indorsement.   *Partnership.* · *Insolvent Estate of Deceased Person.   Words,* " Party."

A member of a partnership who, before delivery of a negotiable instrument made by the partnership and payable to a third person, writes his name upon the back of the instrument, is a " person, not otherwise a party " to the instrument, and therefore under R. L. c. 73, § 81, is liable as an indorser in accordance with the rules there stated; and, if such indorser dies insolvent, commissioners appointed under R. L. c. 142, § 2, should report a claim by the holder of such an instrument as an individual debt of the decedent and not, under § 21 of that chapter, merely as a debt of the partnership of which the deceased was a member.

TWO APPEALS to the Supreme Judicial Court from the report of commissioners appointed under R. L. c. 142, § 2, to receive and examine and report upon claims against the insolvent estate of Edward C. Mead, late of Somerville.

The claim of the Fourth National Bank was upon three notes of Mead, Mason and Company, payable to the bank's order and amounting in all to $26,000.   Mead, Mason and Company were a partnership composed of Edward C. Mead and William M. Mason.   Edward C. Mead wrote upon the back of each note before delivery, "Waiving demand and notice, Edward C. Mead."

The claim of the Winthrop National Bank was upon two notes of Mead, Mason and Company payable to the bank's order, and upon one note of a third party payable to Mead, Mason and Company and indorsed in blank by the partnership.   The three notes amounted to $21,900.   Edward C. Mead had written upon the back of each note before delivery, "Waiving demand and notice, Edward C. Mead."

The commissioners allowed the two claims as partnership debts, that of the Fourth National Bank in the sum of $23,845, and that of the Winthrop National Bank in the sum of $21,900, and so reported under R. L. c. 142, § 21.

The appeals were heard by *Braley,* J., who found the above facts among others, stated that he was of opinion that the appeal should be sustained and the report of the commissioners reversed, and that the appellants' claims should be allowed as an individual claim against the estate; and, at the request of the appellee, reported the case to the full court, such order or decree to be made as justice should require.

*F. N. Nay,* (*J. L. Bates* with him,) for the Fourth National Bank of Boston.

*R. E. Goodwin,* for the Winthrop National Bank of Boston.

*H. C. Attwill,* receiver of the property of Mead, Mason and Company, was heard by leave of court.

RUGG, C. J. A partnership composed of Edward C. Mead and William M. Mason made, payable to the order of each of the plaintiffs, promissory notes signed with the firm name of Mead, Mason and Company, and each partner indorsed them before delivery in his individual name. The point at issue is whether such notes can be proved against both the partnership estate and the estates of the individual partners.

The decision depends upon the meaning of the negotiable instruments act as applied to these facts. Its pertinent provisions are printed below.*

---

* R. L. Chapter 73. "Section 34. Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply: . . .

"6. Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign he is to be deemed an indorser."

"Section 80. A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.

"Section 81. Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules:

"1. If the instrument is payable to the order of a third person he is liable to the payee and to all subsequent parties;

"2. If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer;

"3. If he signs for the accommodation of the payee he is liable to all parties subsequent to the payee."

The argument is urged that the words in § 81, to the effect that "a person, not otherwise a party to an instrument," cannot apply to one of a partnership so signing, for the reason that he is already a party to the instrument by virtue of being a member of the partnership.

This contention cannot be supported. It had been decided before the enactment of the negotiable instruments act that a partner indorsing individually was a party different from the partnership and thereby might incur a double liability arising from the two distinct contracts by which he had bound himself. *Roger Williams National Bank* v. *Hall,* 160 Mass. 171. Since the passage of the act, it was said in *Faneuil Hall National Bank* v. *Meloon,* 183 Mass. 66, respecting the liability of partners indorsing a partnership' note as individuals, that they "were none the less indorsers and none the less liable as such because they were also liable as members of the firm which made the note."

Apart from authority this conclusion is sound. The purpose of the negotiable instruments act was to make uniform throughout the United States the law upon commercial paper by means of the adoption by the Legislatures of the several States and by Congress of substantially identical statutes. *Union Trust Co.* v. *McGinty,* 212 Mass. 205, 206. The law among the several States had been in great confusion touching the nature of the liability of the person who was neither maker nor payee and who placed his name upon the back of the instrument before its delivery. But, so far as we are aware, everywhere such indorsement was treated as conferring greater security to the paper.

Our own law was settled that, although entitled to notice as an indorser, in all other respects he was co-maker. *Brooks* v. *Stackpole,* 168 Mass. 537. This is changed by the act, and a person so signing now is treated as an indorser. The liability of a partner indorsing before delivery the paper of his firm heretofore has been treated as distinct from that incurred by him as co-partner. It adds in many instances to the value and to the ease of sale of the firm paper. This rule of law ought not to be treated as abrogated unless plainly required by the terms of the act.

Construing with accuracy the crucial words of § 81, a person who as an individual signs upon the back of a promissory note is "not otherwise a party to" that instrument in the same capacity,

because liable through membership in the firm whose name appears as maker. In the sense in which the word "party" there is used, the partnership which makes the note is the "party" liable as maker, although there may flow as a subsidiary inference of law an individual liability of each partner in default of firm assets. In this aspect and for this purpose the partnership may be treated as personified and as an entity separate from the individuals who compose it. See *United States* v. *Adams Express Co.* 229 U. S. 381, 390. Moreover, the act is designed in part as a codification for the practical use of business men. It ought to be interpreted so as to be a help and not a hindrance to the easy ascertainment of the rights and liabilities of the several parties to commercial paper. To this end the words in § 81, "a person, not otherwise a party," must refer to one who appears and can be recognized from that which is written within the four corners of the instrument as a "party." Partnerships often assume a style or designation which affords no clew to those who are its members. Not infrequently it might be a hardship to compel the holder of firm paper which bears an indorsement made before delivery to ascertain at his peril whether the person making such indorsement was "otherwise a party to the instrument" through being one of the partnership which was maker.

The act treats every party to negotiable paper, whose status is not clear, as an indorser. See § 34, cl. 6, and § 80.

The result is that a partner who individually indorses before delivery commercial paper made by his firm is a "person, not otherwise a party" in the sense in which those words are employed in § 81. It follows that the claims of each of the plaintiffs should be allowed against the estate of the deceased partner.

*Judgment in each case accordingly.*