HERBERT T. PEMBROOK V. STATE OF NEBRASKA.

FILED FEBRUARY 21, 1930.   No. 27088.

*C. L. Stewart* and *Waring & Waring,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *George W. Ayers, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and LANDIS, District Judge.

LANDIS, District Judge.

The plaintiff in error, designated hereafter as defendant, was convicted of manslaughter and sentenced. Of the numerous errors presented in the petition in error, defendant relies on and discusses only four in his brief, namely, insufficiency of the evidence to support the verdict, excessive sentence, overruling of motion to quash, and the filing of the amended information.

This is the second appearance of this cause here, in that a previous conviction of the defendant for second degree murder was reversed and cause remanded for new trial. See *Pembrook v. State,* 117 Neb. 759. Judge Thompson says in that opinion: "At Harvard, in Clay county, in an altercation between one French and the plaintiff in

error, hereinafter called defendant, in which such French was the aggressor, the latter was stabbed several times by defendant with the blade of a small pocket knife, from which wounds French died. * * * Further, we find the record is without proof to sustain a conviction of murder, either in the first or second degree. * * * Also, as French, the deceased, conceived and planned the fatal meeting, and was the aggressor at the start of the altercation, it might be advisable to say we do not want to be understood as holding that this record reflects sufficient evidence to warrant a conviction of the crime of manslaughter; and as a retrial may be had, neither do we think it wise to discuss the indicated facts, notwithstanding we have read with care the entire record."

The evidence in the record now before us, offered by the state, shows that on the afternoon of the tragedy the defendant told John Miller that French's wife had a social disease and was not fit to run a restaurant. This was communicated to French, and on the evening of the same day he called defendant across the street and with Miller took up this statement about his wife, which defendant denied. French then slapped the defendant. At this point Miller left them.

In the first trial, the record of which this court reviewed, the state offered no eye-witness as to what took place between the deceased and the defendant at the time the stabbing was done. In the instant record such a witness was offered in one E. R. Pense. This witness testified: "Herbert Pembrook and Herbert French were standing out on the sidewalk, and Herbert had his back to me, and Herbert Pembrook was facing me; and Herbert Pembrook made a rush at French and stabbed him. Herbert Pembrook says: 'You dirty * * * if you don't let me alone I'll cut your * * * out.'"

The testimony of Dr. Gibbon is that he found eight knife wounds on French's body, which he describes as "a superficial one inch cut half way between the shoulder and elbow upon the dorsal surface of the left arm; another superficial

half inch cut half way between the elbow and wrist on the left arm on the dorsal surface; a four inch cut, about four inches long and two inches deep, in the left buttock, posterior surface; a two inch cut, two inches long and two inches deep, on the lateral surface of the left thigh; a one inch cut, one inch deep, on the ventral surface of the scrotum; a half inch cut on the right side of the scrotum, superficial. I found another cut, a half inch long and two inches deep, low in the right groin, and I found another cut, two inches long and about four inches deep, high up in the right groin, which severed the right external iliac artery. The cut extended upward into the abdominal cavity and severed this artery," and was the fatal one which caused the death of Herbert French. It is without dispute that the defendant inflicted these wounds.

William Seybold testified to a vulgar statement of the defendant some time previous to the tragedy which is premonitory of the two scrotum wounds inflicted. A careful reading of the record convinces us that there is sufficient evidence to support the verdict and the error complained of that the evidence is insufficient cannot be sustained.

As to the errors claimed in allowing the amended information to be filed and in refusing to quash it, the defendant insists that because at the former trial the verdict was guilty of the crime of murder in the second degree, although this was reversed for new trial, he was in effect acquitted of the crime of first degree murder. The precise question is whether a conviction of a lesser offense than that for which the accused was informed against is a bar to further prosecution for the greater offense if the accused is granted a new trial. Nebraska is committed to the position that the defendant cannot benefit by the verdict of the jury, if he chooses to appeal from it. The reversal of the judgment of guilty of murder in the second degree and the remanding of the case for new trial placed the defendant in the same position he would have been had no former trial been had, and the whole case is open for investigation. *Clarence v. State*, 89 Neb. 762.

The defendant further contends that by stating to the jury that they would not be warranted under the evidence in finding the defendant guilty of murder in either the first or the second degree, and that the case was being tried and submitted to them only upon the issue of manslaughter, is equivalent to telling the jury that the court believed that the defendant should be found guilty of manslaughter. We cannot agree with this, because it is based on the assumed premise that the jury were not intelligent and deliberately disregarded their oath. The long experience of the race is behind our jury system. This method of determining facts is peculiarly a development of our jurisprudence, of which we are justly proud. This jury received carefully prepared instructions, fully protecting the rights of the defendant, and we are not prepared, upon this record, to say that the twelve men, bringing their experience and common sense to a consideration of this case, deliberately misconstrued plain instructions, and inferred an opinion of the court as a basis of their verdict.

The sole issue submitted to the jury was manslaughter, and the court did not err in allowing the amended information to be filed or in refusing to quash it.

Defendant claims his ten year sentence for manslaughter is excessive. The record reflects nauseating, disgusting, vile and primitive acts and instincts. From the method and way of living of the defendant, society should be protected. He is close to 50 years of age and has been in continuous confinement since his arrest on September 19, 1927. Probably the ultimate interests of society, as well as of the defendant, would best be conserved if the judgment be modified. While the record sustains the verdict of the jury, and is free from prejudicial error, yet it does show that deceased was a large, powerful, robust man; the defendant a much smaller man, and that on two former occasions the defendant was viciously and brutally assaulted by the deceased. After carefully considering the whole record, we are inclined to the view that there are grounds upon which the defendant may base argument against receiving the limit under a conviction of manslaughter.

Under provisions of section 10186, Comp. St. 1922, the judgment of the district court is modified to the extent that the defendant shall serve a term of five years. As thus modified, the judgment is affirmed.

AFFIRMED: SENTENCE REDUCED.