ROSE STAMMELMAN, PLAINTIFF-RESPONDENT, v. INTERSTATE COMPANY, A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT-APPELLANT.

Argued January 18, 1933—Decided June 17, 1933.

Before Justices TRENCHARD, CASE and BROGAN.

For the plaintiff-respondent, *Maurice C. Brigadier.*

For the defendant-appellant, *Donald Lewis (Charles H. Meyer,* of the New York bar, of counsel).

The opinion of the court was delivered by

CASE, J. The action is for rent for the months of April and May, 1932. The District Court judge, sitting without a jury, found for the plaintiff, and the defendant appeals. The lease sued upon was in writing, dated November 13th, 1928, and was for a term of ten years commencing on the 1st day of January, 1929, and ending on the 31st day of December, 1938. The execution on behalf of the tenant was in the name of the defendant company by E. B. Aymar as vice-president. The seal of Interstate Company was affixed. The defendant entered into possession of the premises on the first day of the term, vacated the same on October 15th, 1930, and discontinued the payment of rent March 31st, 1932.

The appellant argues that Aymar, vice-president, in signing the lease, signed as an agent of the corporation and that as the lease exceeded the term of three years and said agent had not been lawfully authorized in writing, the lease, under section 1 of the statute of frauds (2 *Comp. Stat., p.* 2610) had the legal effect of a lease at will only.

Plaintiff first denies, unsuccessfully we find, the factual assertion that the authority was not in writing. By the defendant's by-laws the president was given the power to "sign and execute all authorized bonds, contracts or other obligations in the name of the corporation," and the vice-president was empowered to perform the duties of the president during the absence or inability of the president. At the time of the execution the president was absent in California, and Aymar was vice-president. But the vice-president had no power that

the president would not have had if present, and the president would not have had the power to sign a lease agreement unless the board of directors had authorized the same. There was consequently a break in the written authority of Aymar to execute.

Plaintiff next asserts that the execution by Aymar was the act of the corporation itself and not that of an agent and that consequently the authority need not be in writing. The argument is that the acts of officers of a corporation in the execution of an instrument are not acts of agents but are acts of the corporation acting in chief; and *American Soda Fountain Co.* v. *Stolzenbach*, 75 *N. J. L.* 721, is cited in support. Before discussing that case, it may be well to glance at the general background of our jurisprudence on the subject.

Mr. Justice Depue, speaking for the Court of Errors and Appeals, in *Fifth Ward Savings Bank* v. *First National Bank*, 48 *N. J. L.* 513, said:

"The powers of the officers of a corporation over its business and property are strictly the powers of agents—powers either conferred by the charter or delegated to them by the directors or managers, in whom, as representatives of the corporation, the control of its business and property is vested."

In *Mausert* v. *Feigenspan*, 68 *N. J. Eq.* 671, our late Chief Justice Gummere, also speaking for the Court of Errors and Appeals, said:

"The act of the president of a corporation, unless it is shown to pertain to his official duty, or to be within the scope of his employment, cannot be regarded as the act of the corporation, and is not binding upon it. *Titus* v. *Cairo and Fulton Railroad Co.*, 37 *N. J. L.* 98. His powers over its business and property are strictly the powers of an agent, delegated to him by the directors, who are the managers of the corporation, and the persons in whom the control of its business and property is vested."

The Court of Errors and Appeals has repeatedly affirmed the principle thus enunciated. *Kuebler* v. *Koehler Motors Corp.*, 100 *N. J. L.* 163; *Aerial League* v. *Aircraft, &c., Corp.*, 97 *Id.* 530; *Thomson* v. *Central Passenger Railway Co.*, 80 *Id.* 328.

With the principle thus thoroughly established that the powers of an officer of a corporation are strictly the powers of an agent conferred either in the charter or delegated by the board of directors the sole authority cited in opposition is the American Soda Fountain case, *supra*. We think that the decision does not have the wide application that respondent would give it; specifically we think that it does not purport to hold that an officer of a corporation, in undertaking to bind the corporation by a solemn contract that is not shown to be in the usual course of business, acts otherwise than as an agent who must keep within the scope of his authority. That this application was saved from involvement in the determination quite conclusively appears from the language of the opinion itself, as for instance at page 731:

"This whole line of argument (viz., the attempted application of the law of agency) is not only wide of the mark for the reason already stated, but also involves the further and fundamental error of assuming that the issue here arises under the law of principal and agent, and the question is as to the authority of an officer to bind a corporation as by a contract, where the corporation repudiates the act and denies the corporate obligation, whereas the question here is at once a narrower and different one."

In the case at bar the corporation was in the business of operating soda fountains and luncheonettes and selling candies and tobacco. If we assume that the president and, in his absence, the vice-president, were authorized to manage the defendant's business, we have no proof that the making of long term leases was within the usual course of business. The plain inference is that it was not.

We conclude that the act of Aymar in executing the lease was that of an agent whose authority to bind his principal was required to be in writing and that there was no such authority at the time the instrument was executed.

But the respondent further contends that in any event the lease was, subsequent to the making thereof, ratified by the defendant company. A subsequent ratification of an act done by another, assuming to act in the capacity of an agent,

though without any precedent authority, creates the relation of principal and agent, and after such ratification the principal is bound by the act to the same extent as if it had been done by his previous authority, provided there be knowledge of all the attendant facts and circumstances. *Gulick & Holmes* v. *Grover*, 33 *N. J. L.* 463, 471; *Spencer Heating Co.* v. *Abbott*, 91 *Id.* 594. That a ratification, properly made, is effective as within the first section of the statute of frauds, if the person charged with ratification of the instrument had full knowledge thereof, seems to have been recognized by the Court of Errors and Appeals, in *Clement* v. *Young-McShea Amusement Co.*, 70 *N. J. Eq.* 677, 683. Ordinarily the ratification of an unauthorized act must be in the particular mode or form necessary to confer authority to perform it in the first instance (21 *R. C. L.* 924, § 103), which, if applicable to the instant case, means that a ratification of Aymar's act, to be binding, should be in writing. Of the defendant's knowledge of the lease and its provisions there can be no doubt. Sundry of its leading officers, acting within the scope of their respective duties, made writings in behalf of the company that showed knowledge beyond peradventure. And we think that there is enough in writing by the company to show a recognition of the lease as an authorized contract. During each of thirty-eight months—a period beyond the three-year term permissible to an oral lease—checks were signed by the treasurer and other officers for the rent required by the lease; statements of the volume of defendant's business were regularly made and forwarded by the defendant's comptroller to the landlord in compliance with the lease requirement that a certain increased rental should be paid commensurate with the volume of business done; the comptroller drafted copies of the by-laws with directions in writing that they be handed to the landlord in proof of authority for the execution. Appellant submits that these and other acts by the defendant company were consistent with a conception of the instrument as a lease at will; an assertion with which we do not agree, for we think that the attitude taken by the defendant, in writing, was consistent only with

the acceptance of the lease as an instrument with controlling force *in futuro* both as an obligation by which the defendant was bound and as an asset of which it might dispose; as witness defendant's letter to the landlord under date of November 28th, 1930, six weeks after defendant had removed from the premises:

"It is our wish to sublease the premises we are now leasing from you at 227 Glenridge avenue, Montclair, New Jersey, to the Broadway Star Market. This company is engaged in the fruit and vegetable business and as we understand it will engage in this business in your premises. Inasmuch as our lease requires your consent in writing, will you please forward this to us so we will have same by Monday, December 1st, at the latest."

Of like significance is the letter dated December 9th, 1930, from the defendant to the landlord:

"In connection with the subletting of the store at 227 Glenridge avenue, Montclair, New Jersey, now occupied by us, the sublessee has requested that he have permission to occupy the store for the conducting of a grocery, it being understood that no candy or cigarettes are to be sold. \* \* \* We, of course, are perfectly willing to have the sublease omit this if you are willing to cancel it from your lease to us. \* \* \* Since the subtenant is very much in a hurry to get the lease signed so that he may start making such alterations that are necessary, I should be glad if you would have your attorney prepare the necessary papers with respect to this to-morrow morning if practicable, if you agree to the changes above suggested."

The evidence sustains a factual finding that the sum total of the writings of the defendant company, over a period of more than three years beginning immediately with the execution of the lease and until March, 1932, constitutes a ratification of the lease; and a ratification, under the rule already stated, gives the document the same standing that a precedent authorization would have done. Under the by-laws and the circumstances first above mentioned, Aymar, as vice-president, was empowered, in writing, to sign an authorized contract.

Finally, it is said by the appellant that plaintiff cannot maintain the action because her alleged assignor, Mortimer J. Stammelman, had no title to the property which he could lease, and further that if defendant be estopped from asserting that fact, there was no assignment by Mortimer J. Stammelman to the plaintiff. Joseph Stammelman, owner of the property, had died intestate leaving him surviving a son, the above mentioned Mortimer, and a daughter, Bertha Tunick, as his heirs-at-law, and his widow, the present plaintiff. The title thereupon vested in Mortimer and Bertha subject to plaintiff's dower right. Mortimer was appointed administrator of the decedent's estate. The lease sued upon recited that it was made by "Mortimer J. Stammelman, administrator for the estate of Joseph Stammelman," but was signed by Mortimer J. Stammelman, individually. All of the defendant's rent checks were drawn to the order of Mortimer J. Stammelman, individually, and many of the letters relating to the property and the tenancy were similarly addressed. The letter by the defendant dated July 1st, 1932, giving notice of intention "to end any tenancy that may exist between us in connection with the above described premises" was addressed to Rose Stammelman and Mortimer J. Stammelman. There is sufficient, we think, upon which to base a factual finding that the defendant recognized Mortimer J. Stammelman, individually, as its landlord. A tenant may not deny the landlord's title (*Howell* v. *Ashmore,* 22 *N. J. L.* 261) even after quitting possession. *Zabriskie* v. *Sullivan,* 80 *Id.* 673; *affirmed,* 82 *Id.* 545. In 1931, Mortimer J. Stammelman and Bertha Tunick severally deeded their respective rights, title and interest in the property to the plaintiff, Rose Stammelman. A grantee of leased lands succeeds to the rights of the grantor in the indenture of lease; an act concerning conveyances. 2 *Comp. Stat., p.* 1538, § 16; *Roberts* v. *McPherson,* 62 *N. J. L.* 165; *affirmed,* 63 *Id.* 352. Therefore plaintiff had the same enjoyment of the covenants of the lease that her son, Mortimer, might previously have had.

The trial judge rendered judgment without announcing his factual findings. We have assumed that he actually found

such facts as were necessarily incident to the judgment, and we in turn have determined that such findings are justified by the evidence.

The judgment below should be affirmed, with costs.