LA CAISSE POPULAIRE CREDIT UNION *vs.* GEORGE J. CROSS & another.

Worcester.   January 10, 1935. — January 15, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Practice, Civil,* Appellate Division: report. *Bills and Notes,* Construction, Signature, Indorser.

Interpretation of G. L. (Ter. Ed.) c. 107, § 39.

In an action in a district court, a party saving no question of law at the trial was not entitled as of right to a report, but a report made by the judge was considered as voluntary under G. L. (Ter. Ed.) c. 231, § 108.

The language of a promissory note reading "we [A] and [B] and . . . jointly and severally promise to pay," and signed by A, B, and C, was ambiguous and the capacity in which C signed was not clear, within G. L. (Ter. Ed.) c. 107, § 39, and by force of that statute C was an indorser as matter of law.

CONTRACT. Writ in the Central District Court of Worcester dated July 21, 1931.

The action was heard in the District Court by *Wall,* J., who found for the defendant Cross and for the plaintiff against the defendant Ovelina Aubin. A report to the Appellate Division for the Western District was ordered dismissed. The plaintiff appealed.

*E. A. Brodeur,* for the plaintiff.

*L. J. Croteau,* for the defendant Cross, submitted a brief.

DONAHUE, J.   The plaintiff is the payee and holder of the following promissory note:

"*$1,000.00*　　　　　　　Worcester (Mass) *March 6 1924*

For value received, we *Wilfred Aubin* and *Ovelina Aubin* and.........jointly and severally promise to pay to the *La Caisse Populaire* Credit Union *de Worcester* or order the sum of...ONE THOUSAND...DOLLARS, in *monthly* instalments of *Seventy-five dollars* each, with interest at the rate of *Ten-10%* per cent per annum.

> Ovelina Aubin
> Wilfred Aubin
> George J. Cross."

The note was made on a printed form, the words appearing above in italics being in typewriting. By agreement of counsel the original note was submitted to us for examination. After the name "Wilfred Aubin" in the body of the note the printed words "as principal" were struck out, as were the words "as sureties" after the blank space indicated above. Following the death of Wilfred Aubin the plaintiff brought this action on the note against Ovelina Aubin and George J. Cross as makers. The defendant Ovelina Aubin was defaulted and the case went to trial in the Central District Court of Worcester against the defendant Cross alone.

The trial judge found "Upon all the evidence" that the defendant Cross was an indorser and not a maker of the note, that the makers were Wilfred Aubin and Ovelina Aubin, that no notice of default or nonpayment was given according to law; and found for the defendant Cross. The Appellate Division ordered the report dismissed. The defendant contends that the case is not properly before this court. At the trial the plaintiff made no objection to the admission or exclusion of evidence (G. L. [Ter. Ed.] c. 231, § 108) and filed no request for rulings of law (Rule 27 of the District Courts [1932]). After the judge filed his finding the plaintiff filed a report which, however, did not "contain a clear and concise statement of the rulings upon which a rehearing is requested sufficiently full and accurate for identification" as required by the rule. The plaintiff was

not entitled as of right to a report. *Almeida* v. *Alsdorf,* 291 Mass. 115. We think, however, that the report is to be considered as one filed by the judge of his own volition (G. L. [Ter. Ed.] c. 231, § 108; *East Hampton Bank & Trust Co.* v. *Collins,* 287 Mass. 218) and as presenting the question whether the judge was justified in finding for the defendant Cross.

The negotiable instruments act contains a section which prescribes the construction which must be given "Where the language of the instrument is ambiguous, or there are omissions therein," if certain specified ambiguities and omissions appear. G. L. (Ter. Ed.) c. 107, § 39. That section does not authorize the receipt of extrinsic evidence to clarify such ambiguities or to supply such omissions. What it does is to require a prescribed construction, that is, that a definite legal effect must be given upon the appearance of each of the specified ambiguities or omissions in an instrument whose language is ambiguous. Omitting portions of § 39 which are not here relevant the statute reads: "Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply: . . . 6. Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign he is to be deemed an endorser."

In the interpretation of a section of an act which declares rules for the construction of ambiguous negotiable instruments, regard must be had for the purposes sought to be accomplished by the act as a whole. Among those purposes were uniformity and certainty. *Union Trust Co.* v. *McGinty,* 212 Mass. 205. Included in the design was a codification of the law for practical use by men whose business transactions involved instruments which were negotiable. As has been said, the act "ought to be interpreted so as to be a help and not a hindrance to the easy ascertainment of the rights and liabilities of the several parties to commercial paper." *Fourth National Bank of Boston* v. *Mead,* 216 Mass. 521, 524. The act in sections other than § 39 manifests the general purpose that a party to negotiable paper whose status is not clear is to be treated as an indorser. See §§ 19,

54, 86, 87, 90. *Fourth National Bank of Boston* v. *Mead, supra.*

The portion of the statute above quoted was intended, when applicable, to provide a construction to make certain what a negotiable instrument itself had left uncertain, that is, the status of a party whose signature appeared thereon. The first prerequisite to the application of the statute is that "the language of the instrument is ambiguous." Unless it is, this section of the statute by its terms provides no rule of construction. Read as a whole, including the signatures on the note as well as its text, the language of the instrument here sued upon is manifestly ambiguous. The body of the note states the only promise expressed to be that of the two Aubins, who signed it at the place where makers of notes ordinarily affix their signatures. Ambiguity arose when the defendant Cross placed his signature below the signatures of the two who alone are named above as the promissors. The appearance of the blank space in the body of the note, which is on a printed form, not filled in by the payee and holder does not remove the ambiguity as to the capacity in which Cross intended to sign.

In order that this particular rule of construction provided by the statute shall apply, not only must the language of a negotiable instrument be ambiguous, but the signature must be "so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign." In view of the general purposes of the act, the design appearing in other sections of the act to treat as indorsers parties signing without definition of their capacity and the practical importance of certainty as to the status of a party to an instrument which is negotiable, we think that the words last quoted should not be given a narrow interpretation. Those words would undoubtedly apply to the situation where, solely because of the unusual location of a signature on negotiable paper, an uncertainty as to the intention of the signer arises. This in effect is stated to be the limit of the application of the rule in *Germania National Bank of Milwaukee* v. *Mariner*, 129 Wis. 544, 547; *Greenwood* v. *Lamson*, 106 Vt. 37, 42. In the first cited case the

question was not whether the defendant was bound as maker or as indorser but was whether he was bound upon the note at all. (See *Bank of California* v. *Starrett,* 110 Wash. 231.) The body of the note in that case recited (page 545): "the Northwestern Straw Works promise to pay . . . ." It was signed: "The Northwestern Straw Works, E. R. Stillman, Treas.," followed by the signature of the defendant. The opinion holds that this constituted an ambiguity appearing on the face of the instrument and that parol evidence was properly admitted to show the capacity in which the defendant signed. It holds, however, that the section of the negotiable instruments act here discussed applies only where there is a doubt arising solely from the ambiguous location of the signature. The second case decides that one signing slightly to the left of the signatures of the original makers is a maker. In that case there was nothing in the body of the note indicating in any way that the defendant did not sign as a maker.

The purpose of § 39 is the removal of ambiguities which may appear in the language of negotiable instruments. It is to be interpreted in view of its aim to provide certainty. When the location of a signature, given its ordinary significance, conflicts with what is stated in the body of the instrument an ambiguity in the language of the instrument results. The defendant Cross so placed his name that when the instrument is read as a whole it is not clear in what capacity he intended to sign. We think the application of the rule of construction stated in § 39, cl. 6, fairly interpreted, is not to be limited to cases where an ambiguity results solely because of the place where a signature is placed upon an instrument, but that when, as here, one so places his signature on an instrument that when the whole is read an ambiguity exists as to his status, he must be taken to be an indorser.

The trial judge found that the defendant Cross was an indorser and not a maker on extrinsic evidence which would appear to warrant such a finding. But the case falls within a statutory rule of construction which requires as matter of law that the defendant be deemed an indorser

and the case is decided on that ground.   Since notice of dishonor by nonpayment of the note was not given to the defendant, the result reached by the trial judge was right.

*Order dismissing report affirmed.*