HAROLD J. DUNBAR *v.* SCOTT M. FARNUM & WIFE, CO-PARTNERS.

February Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed May 4, 1937.
Opinion on reargument and petition for new trial filed January 4, 1938.

314

*Conant & Parker* for the plaintiff.

*Porter, Witters & Longmoore* for the defendants.

POWERS, C. J. This is an action of contract to recover damages for the breach of an executory contract for the sale of a water system in the town of Lyndon. It was tried by jury in the court below, and, at the close of the evidence, a verdict was ordered for the defendants. The plaintiff excepted.

The defendants are husband and wife. They owned and operated the water system in question and thereby supplied their customers with domestic water at scheduled rates. They carried on this and other business, ostensibly as partners, under the firm name and style of Scott M. .Farnum & Wife. They regarded and conducted themselves as partners, and so registered in the Secretary of State's office. The title to the water system and other real estate was held by them in their trade names. Mr. Farnum was the active and managing partner, while Mrs. Farnum made collections, did the banking and kept the company books.

There was evidence warranting findings of the following facts:

The plaintiff negotiated with the defendants for the purchase of the water system, and on November 24, 1934, he and Farnum· went to St. Johnsbury, and had a contract drawn by an attorney. This contract is captioned "Memo. of Agreement between Scott M. Farnum and Wife and Harold Dunbar, all of

Lyndon, Vermont," and is signed by the plaintiff and Scott M. Farnum. The name of Nellie M. Farnum is attached to it, but it is not denied that this name was written by Farnum. This contract was subject to the approval of the public service commission, and called for a down payment of $1,000 by way of an order on S. E. Richardson, payable March 1, 1935. The approval of the commission was granted December 27, 1934. The hearing on the application for this approval was held on December 20, 1934, and thereafter, on the same day, the plaintiff asked Farnum for a deed of the property. The latter replied that he would not make the deed unless the plaintiff paid a hundred dollars for the upkeep of the property for the twenty days then preceding and gave the defendants the next three months' water rent on about a dozen tenements owned by them. Subsequently, at different times, the plaintiff told Farnum he was ready to carry out the contract, and called for the deed. This demand was not complied with.

The defendants are sued as partners. To establish the contract sued on, the writing above referred to was received in evidence. As we have seen, this contract was not signed by the partnership and does not profess to be executed as a partnership agreement. Rather, it purports to be the joint contract of the individual Farnums.

■ The waterworks in question were real estate. This is admitted. So, by force of the Statute of Frauds, no action upon a contract for the sale thereof could be maintained unless such contract was in writing, signed by the party to be charged. P. L. 1675. The party here sought to be charged is the partnership known as Scott M. Farnum & Wife. No such party signed the contract referred to. So the suit against the firm breaks down right at this point.

■ ■ But the contract of November 24, 1934, purports, at least, to evidence a joint obligation of Scott M. Farnum and Nellie M. Farnum. So whatever theory we should adopt as to the entity of a partnership as distinct from and independent of its individual members, it is quite certain that a partnership is not the same thing as joint ownership or joint responsibility. Therefore these defendants may be liable as joint contractors, though not liable as partners. But here again the plaintiff is met with the Statute of Frauds. If Nellie M. Farnum is to be

held as a joint contractor, she must have signed the contract, either by her own hand or by an agent duly authorized by a writing. P. L. 1675. No claim is made that Scott Farnum had written authority to sign his wife's name to the contract in question.

But the plaintiff insists that this defect of authority goes for nothing because Mrs. Farnum ratified the contract made and signed by her husband as above stated, with full knowledge of its terms and provisions. A subsequent ratification is, of course, equivalent to a prior authority. But the rule is that the ratification of an unauthorized act must be of the particular mode or form necessary to confer authority to perform it in the first place. So, by the common law rule, power to execute an instrument under seal must be given by an instrument under seal, and the ratification of an instrument that the law requires to be sealed must also be sealed. *Blood* v. *Goodrich,* 12 Wend. (N. Y.) 525, 27 A. D. 152; *Drumright* v. *Philpot,* 16 Ga. 424, 60 A. D. 738. So, too, where written authorization is required and none exists, ratification must be in writing to bind the principal. *Bruns* v. *Huseman,* 266 Ill. 212, 107 N. E. 462, 463; Meachem, Agency, § 136; *Despatch Line* v. *Bellamy Mfg. Co.,* 12 N. H. 205, 37 A. D. 203; *Llewellyn* v. *Sunnyside Coal Co.,* 242 Pa. 517, 89 Atl. 575; *Allegheny Gas Co.* v. *Kemp,* 316 Pa. 97, 174 Atl. 289, 293; 2 C. J. S. Agency, § 45; *Stammelman* v. *Interstate Co.,* 112 N. J. Law, 342, 170 Atl. 595, 597.

Such a ratification need not be a formal document. It need not be addressed or delivered to the other party to the contract. If it recognizes the existence of the contract and either expressly or impliedly approves it, the Statute of Frauds is satisfied. *Allegheny Gas Co.* v. *Kemp, supra.* Though here it must be evidenced by a writing signed by Mrs. Farnum, the ratification itself is merely an act of her mind, *Bailey* v. *Bryant,* 24 Pick. 198, 41 Mass. 198, 203—a deliberate choice to be bound.

The only written ratification claimed by the plaintiff is (1) the filing which Mrs. Farnum endorsed on a typewritten copy of the contract of November 24, 1934, and (2) the application made to the public service commission under P. L. 6106. The filing referred to falls far short of a sufficient ratification, since it does not express Mrs. Farnum's approval of the contract.

█ The application to the public service commission, being a necessary step in the furtherance of the sale, and being necessarily an approval thereof, might be a sufficient ratification by Mrs. Farnum if she signed it. But the record does not show that she did sign it. To be sure, it is stated in the brief that "she petitioned the Public Service Commission for authority to sell the system according to the contract." And we are referred to certain pages of the transcript and to one exhibit for authority for this statement. These references do not support the statement, and we find nothing in the record to indicate that Mrs. Farnum signed the application.

The views hereinbefore expressed render the other exceptions of no consequence.

*Judgment affirmed.*

## Upon Reargument.

When the foregoing opinion was read at the May term, the plaintiff filed a motion for reargument. This was granted and the entry order was withheld. The reargument was heard and has been considered.

It must not be forgotten that this suit is against the firm of Scott M. Farnum & Wife, and not against the defendants as joint promisors.

In the original opinion we did not undertake to pass upon the question of just what a partnership is before the law. Perhaps a determination of that question will be of aid in disposing of the questions now before us.

There is a spirited disagreement among the authorities as to whether a partnership is a legal entity, separate and apart from the individuals composing it. Some say that it has no such separate existence, basing their conclusions upon what is said to be the theory of the common law. Others hold that it has such separate existence and that it stands before the law the same as a person or corporation does. Still others maintain that it is so far personified as to be treated as an entity in most of its relations, though it does not have all the attributes of a person. The business world has always regarded a partnership as a person, and there is a growing tendency on the part of the courts to

adopt the commercial view. Some of the many cases holding to the view that a partnership is an entity, now at hand, are *Good* v. *Jarrard,* 93 S. C. 229, 76 S. E. 698, 43 L. R. A. (N. S.) 383, 387; *State* v. *Pielsticker,* 119 Neb. 419, 225 N. W. 51, 52; *Bankers Trust Co.* v. *Knee* (Ia.), 263 N. W. 549, 551; *Holmes* v. *Alexander,* 52 Okl. 122, 152 Pac. 819, Ann. Cas. 1918D, 1134; *Clark* v. *Slate Valley R. Co.,* 136 Pa. 408, 20 Atl. 562, 10 L. R. A. 238; *Johnson* v. *Shirley,* 152 Ind. 453, 53 N. E. 459, 461. See, also, *Fourth Nat. Bank* v. *Mead,* 216 Mass. 521, 104 N. E. 377, 378, 52 L. R. A. (N. S.) 225.

 *Caswell* v. *Maplewood Garage,* 84 N. H. 241, 149 Atl. 746, 73 A. L. R. 433, is an interesting and instructive case covering the subject now under discussion. Upon a full review of the authorities, the court reaches the conclusion that a partnership is an entity separate and apart from the individuals composing it.

Judge Learned Hand, now an eminent member of the Circuit Court of Appeals, Second Circuit, said in *Re Samuels & Lesser,* 207 Fed. 195, 198, that "The whole subject of partnership has undoubtedly always been exceedingly confused, because our law has failed to recognize that partners are not merely joint debtors. It could be straightened out into great simplicity, and in accordance with business usages and business understanding, if the entity of the firm, though a fiction, were consistently recognized and enforced. Like the concept of a corporation, it is a device of the utmost value in clarifying ideas and in making easy the solution of legal relations."

This court has long been committed to this entity theory. Judge Barrett said, in *Walker* v. *Waite,* 50 Vt. 668, 676, that "a partnership, or a joint stock company, is just as distinct and palpable an entity in the idea of the law, as distinguished from the individuals composing it, as is a corporation; and can contract as an individualized and unified party, with an individual person who is a member thereof, as effectually as a corporation can contract with one of its stockholders."

 It is frequently said that a partner, acting for his firm, stands as a principal as to his own interest and as an agent as to the interests of his partners. But under this entity theory, a more accurate conception of the transaction is that a partner, so acting, acts in the single capacity of agent of the firm, the

individuality of the partners being merged therein. Parsons, Partnership, 4th ed., § 5.

It necessarily follows that when a firm is sued, a partnership undertaking must be established to warrant a recovery. The issue is one of partnership liability, alone. Individual liability is not at all within the issue to be tried, though such a liability may result from a plaintiff's verdict.

So it was that we said in the original opinion that the suit broke down when it appeared that the contract sued on was not a partnership engagment.

That a partner can ratify an unauthorized partnership agreement is not denied. But here there is no partnership agreement to ratify.

It is earnestly argued that Mrs. Farnum waived the defect in the contract here involved and that she is estopped from setting up the Statute of Frauds as a defense. That the benefit of this statute may be waived is well established. *Mc-Donald* v. *Place*, 88 Vt. 80, 84, 90 Atl. 948; *Taplin* v. *Hinckley Fibre Co.*, 97 Vt. 184, 186, 122 Atl. 426. But what did Mrs. Farnum do to waive the advantage that the statute gave her?

She received from her husband, when he returned from St. Johnsbury, a typewritten copy of the contract, filed it, and put it away. She was satisfied with the contract as written, and may have said as much to Mr. Farnum. At the time of the trial below she was willing to go on with it. That is all. Mrs. Farnum never communicated her satisfaction with the contract to the plaintiff, and he never heard of it until the time of the trial, so far as the record shows.

A waiver is the voluntary relinquishment of a known right. To establish it, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right in question. *Kahn* v. *Bancamerica-Blair Corp.*, 327 Pa. 209, 193 Atl. 905, 907. It may be express or implied. But if it is of the latter class, caution must be exercised both in proof and application. The facts and circumstances relied upon must be unequivocal in character. *Rogers* v. *Whitney*, 91 Vt. 79, 82, 99 Atl. 419. Silence, alone, is never a waiver. It is only where there is an obligation to speak, that it has that result. *Titus* v. *Insurance Co.*, 81 N. Y. 410; *Crawford* v. *Winterbottom*, 88 N. J. Law,

588, 96 Atl. 497, 498; *List & Son Co.* v. *Chase,* 80 Ohio St. 42, 88 N. E. 120, 17 Ann. Cas. 61, 62; *Lord Construction Co.* v. *Edison Portland Cement Co.,* 234 N. Y. 411, 138 N. E. 39, 41. When it is in derogation of a statutory right, it is not favored, *Colgate* v. *U. S. Leather Co.,* 73 N. J. Eq. 72, 67 Atl. 657, 663, and will not be inferred from doubtful acts. *Foundry Mfg. Co.* v. *Farr,* 96 Vt. 382, 387, 119 Atl. 885.

If, when the contract, exhibit 1, was offered in evidence, there had been no objection to it, there would have been a typical case of waiver by silence. For there arose a duty to speak. As here involved, the statute simply amounts to a rule of evidence, and if one entitled to invoke it remains silent when parol evidence is offered and admitted he must ever after hold his peace. But when this contract was offered, the defendants objected on the ground that it was insufficient under the statute, and it was admitted subject to their exception. The carbon copy, hereinbefore referred to, was offered in evidence, not to prove the contract, but in connection with the testimony of Mrs. Farnum, the only importance of it being to show that she approved a contract of that character.

Perhaps it would make the unimportance of Mrs. Farnum's conduct a little plainer if we refer to Farnum's conduct. He signed the contract. He manifested his satisfaction thereby. He said nothing then or thereafter about the statute. Yet, it would be a bold practitioner who would claim in court that he waived any rights or was estopped to assert them. As argued by the defendants, to enable one so easily to forfeit his right to avail himself of the Statute of Frauds would be equivalent to a repeal of the statute in most, if not all, cases.

Much less is there evidence sufficient to create an estoppel. There was no reliance upon the acts or statements of Mrs. Farnum by the plaintiff. He knew nothing about them. You cannot rely upon what you do not know, and you cannot be misled by something you know nothing about. *Peoples Nat. Bank* v. *Bartel,* 128 Pa. Super. 128, 193 Atl. 59, 60.

What we have hereinbefore said applies with equal force to any claim that might be made that Mrs. Farnum waived the right to question her husband's authority to sign her name to the St. Johnsbury contract. Attention is again called to the fact that such authority is not here involved. If he had signed

the firm name to that contract, the general law of partnerships would have furnished his authority. But he signed her individual name. The statute required written authority to do that, and there is no evidence of such authority.

Nor can it successfully be claimed that Mrs. Farnum ratified the St. Johnsbury contract. For, while a subsequent ratification is as good as a previous authorization, *Federal Garage* v. *Prenner*, 106 Vt. 222, 224, 172 Atl. 622, and while a parol ratification is usually sufficient, the Statute of Frauds required written authority to sign her name to the contract involved, and the law requires that a ratification in such a case shall be in writing. *Stammelman* v. *Interstate Co.*, 111 N. J. Law, 122, 166 Atl. 724, 725; *Llewellyn* v. *Sunnyside Coal Co.*, 242 Pa. 517, 89 Atl. 575; *Bruns* v. *Huseman*, 266 Ill. 212, 107 N. E. 462, 463; *Long* v. *Path*, 37 N. Y. S. 670, 16 Misc. 85.

 Furthermore and finally, it would have done the plaintiff no good in this suit if he had shown that Mrs. Farnum was not in a position to assert her husband's lack of authority to sign her name to this contract, for the simple reason, as sufficiently appears from what we have said about the character of a partnership, he could not here recover against her as a joint promisor. 1 C. J. S. 1219; *Bank of Hickory Flats* v. *Burt & Croley*, 219 Ala. 100, 121 So. 93; see *Claremont Nat. Bank* v. *Wood*, 12 Vt. 252, 255.

## PETITION FOR NEW TRIAL.

The plaintiff has filed and argued a petition for a new trial based upon the newly discovered evidence that Mrs. Farnum signed the firm name to the application to the public service commission for leave to sell the water system to the plaintiff.

 In order to prevail on this petition, it is necessary for him to show that his situation regarding the new evidence is not due to his lack of diligence or that of his counsel. He must not only show that he did not know about it, but he must also show that his lack of knowledge was not due to negligence or lack of attention to the requirements of his case. He must also show that the new evidence is of such a character as to give reasonable assurance that it will work a different result upon a retrial.

The petitioner fails when subjected to these tests.

 It sufficiently appears, we think, from what we have hereinbefore said regarding the waiver of Farnum's want of authority to sign Mrs. Farnum's name to a joint contract for the sale of the water system and the plaintiff's inability to recover here on a joint undertaking that the only feature of the evidence relied upon in the petition, that is of any real consequence in this suit, is the fact that the partnership, in compliance with requirements of the contract, made written application to the public service commission for leave to sell the property to the plaintiff. But this fact was neither new nor newly discovered. It was proved at the trial below. Miss Levarne, clerk of the commission, testified to it. She said that the hearing at Lyndon, December 20, 1934, was on the petition of Scott M. Farnum & Wife; that the original petition was on file at Montpelier. There was talk of delaying the trial that the original papers might be obtained for use at the trial. When objection was made to the plaintiff's attempt to prove this application for leave to sell by parol testimony, it appeared that the defendants had in court a certified copy of the report of the commission on that application. The use of this was tendered to the plaintiff, the tender was accepted, the copy was offered and admitted in evidence. It shows that the application was in the firm name.

In support of the petition, counsel for the plaintiff testify that they did not know that Mrs. Farnum made and signed this application. We accept this testimony as reliable. But in their brief on the main case, they repeatedly refer to this application as Mrs. Farnum's application.

There is a further reason why this petition must fail. The new evidence could not change the result of another trial. It all comes to this: There can be no recovery against the Farnums as individuals, because they are not sued as joint debtors. There can be no recovery against the partnership, because there is no contract signed by it, and no sufficient evidence to show a waiver or estoppel.

We say nothing as to the evidence of the plaintiff tending to show that he was the party first in default, since we deem it unnecessary, though evidently it weighed heavily with the court below.

*The petition is dismissed with costs. Let the judgment order be entered and sent down.*