# Raymond and Kathleen Campbell v. Arnold and Norene Blair and Lawrence Campbell

[ 241 A.2d 791 ]

February Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 2, 1968

*Kolvoord & Overton* for the Plaintiffs.

*Bruce V. Allbee, Esq.,* for Arnold Blair and Norene Blair.

*Joseph C. McNeil, Esq.,* for Lawrence Campbell.

**Barney, J.** This is a declaratory judgment action, brought in chancery, seeking to have the rights of the parties adjudicated with reference to a certain warranty deed, given to the defendants Blair by the defendant Lawrence Campbell. The deed recited the transfer of one acre of land belonging to the plaintiffs, Raymond and Kathleen Campbell, and was executed by defendant Lawrence Campbell as attorney in fact. The chancellor, under the facts of the case, refused to set the deed aside. His findings are not challenged, although his decree in favor of the defendants is.

The plaintiffs, husband and wife, are now residents of Vermont, having moved here from Connecticut in 1960. The defendant, Lawrence Campbell, is a brother of the plaintiff, Raymond Campbell. In 1958 the plaintiffs purchased a farm of 175 acres, with house and barn, in Jericho, Vermont. The house was occupied by the mother of Raymond and Lawrence Campbell until 1959, when it burned. At that time the plaintiffs gave Lawrence a power of attorney. It is undisputed that this power was limited, and did not include the power to convey away the plaintiffs' property by deed. The power of attorney was given to Lawrence to enable him to proceed with cleaning up the fire damage and renew living accommodations of some kind on the premises. Lawrence was a contractor, and was on the scene while the plaintiffs were still then resident in Connecticut.

The defendants Blair came to Lawrence to obtain land upon which to place a house trailer. Mr. Blair's father had performed a number of services for the mother of Lawrence and Raymond Campbell, and Lawrence was disposed to help the Blairs. Raymond gave Lawrence permission to let the Blairs move their trailer on the property and live there.

However, because it was necessary for the Blairs to show title to the land upon which the trailer was to be placed, in order to finance its purchase, Lawrence, without authorization, went ahead and gave a warranty deed of an acre of plaintiffs' land to the Blairs. He told them he had no legal right to make the conveyance but that he was trying to make it as legal as possible under his power of attorney.

The plaintiffs were told of the deed after it was given but before the trailer had been moved on. They made no objection to the deed, but did object to the location of the lot conveyed. The trailer was moved on in 1960. The plaintiffs afterward came to the property and expressed their objections to the location of the trailer. They staked

out an acre at a different place on the property, but the trailer was never moved. In the fall of 1961 the plaintiffs and the defendants Blair agreed to put in a joint water system to serve the Blair trailer and the plaintiffs' dwelling. This was done, with the materials being furnished by the plaintiff and Arnold Blair doing the labor.

During the winter of 1961-62 the water line of the new system leading to the plaintiffs' house froze. Arnold Blair installed a "Tee" which enabled him to continue to have water. In the spring, when the plaintiffs came to the property, they had no water. This precepitated an argument which culminated in the plaintiffs ordering the Blairs off the land.

They did not go, and, in view of the water dispute, proceeded to dig a well on the acre in question. They went on to enlarge their cellar hole to accommodate a larger trailer. During this occupation the Blairs had also installed a cesspool and landscaped the premises. In August, 1962, the plaintiffs instructed their attorney to notify the Blairs that the deed was invalid and that they must leave. This action followed.

The legal controversy before the lower court centered on concepts of waiver and estoppel. The chancellor found that the plaintiffs, by conduct, had waived their right to disaffirm the deed. He found that the plaintiffs had permitted the Blairs to proceed to improve the acre lot and joined them in work on the water line after the plaintiffs had learned of the deed. He further found that the Blairs, in moving on the trailer and making the improvements, relied on the conduct of the plaintiffs in permitting these acts, which reliance would be to the prejudice of the defendants if the validity of the deed could be successfully attacked by the plaintiffs.

This evidence was presented by the defendants in discharge of the burden of proof, which fell upon them when the lack of original authority to make the deed was established. It is to be noted that, in all their evidence, there is no suggestion that any oral or written agreement to sell any land ever obtained between the plaintiffs and the defendants Blair. Moreover, in considering the equitable situation of the respective parties, it must be kept in mind that it was the common intention of Lawrence Campbell and the defendants Blair to make out a deed that would create an illusion of title in the defendants Blair, for their advantage, irrespective of the true circumstances. Considerations of reliance and prejudice in their favor, in the face of that kind of purpose, are singularly inappropriate. It is further to be noted that

160

there is no oral or written transaction offered to specifically evidence ratification of the act of defendant Campbell in making the deed.

■■ This is a critical concern. The relevant provisions of 12 V.S.A. §181 state:

"An action at law or in equity shall not be brought in the following cases unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof is in writing, signed by the party to be charged therewith or by some person thereunto by him lawfully authorized: * * *;

(5) A contract for the sale of lands, tenements or hereditaments, or of an interest in or concerning them. Authorization to execute such a contract on behalf of another shall be in writing."

This provision of the Statute of Frauds has been construed by our court to require any ratification of the unauthorized act of an agent respecting a sale of an interest in lands to also be in writing. *Couture* v. *Lowery,* 122 Vt. 239, 245, 168 A.2d 295. No ratification, oral or written, by the plaintiffs has been pleaded or evidenced. Not only has the Statute of Frauds not been satisfied, there is, literally, nothing to which it can apply or to which a waiver can attach. See *Dunbar* v. *Farnum & Wife,* 109 Vt. 313, 322-323, 196 A. 237, 114 A.L.R. 996.

Restrictive as this doctrine may seem to be, it is an essential requirement. Not only does it stem directly from the statutory language, but it also serves to save the purpose of the act from being subverted. If an unauthorized deed from any source could become a binding conveyance by claimed ratifying conduct, or even inaction, titles would be endlessly in issue. See *Couture* v. *Lowery, supra,* 122 Vt. 239, 243, 168 A.2d 295. The requirement of fifteen years of adverse possession to ripen into title would tend to become anachronistic. 12 V.S.A. §501. The rule is essential to the integrity of the statutory purpose.

■ The Blairs did have permission to place their trailer on the land. A landlord-tenant relationship is implicit in occupancy of premises with the consent of the owner. *Crawford* v. *Jerry,* 111 Vt. 120, 122, 11 A.2d 210. This arrangement has been obscured by the deed facade erected to support the financing of the trailer. The plaintiffs' permissive and cooperative actions toward the Blairs were consistent with a persistence of this situation. Therefore, some consideration

must be given to any rights which might have accrued to the defendants, in the light of their occupancy by consent.

The purpose of a declaratory judgment action is to enunciate, so far as is requested and is appropriate, the rights of all parties. *Proctor* v. *Woodhouse,* 127 Vt. —, 241 A.2d 785. The defendants seek to know, according to their pleadings, their situation with respect to occupancy and with respect to constructions and improvements they have made, both before and after they were told to leave the premises. The facts should be examined to this end, and a new declaratory decree issue.

*Decree and order reversed and cause remanded.*