Freeman G. White and June L. White v. H. Dwight Hubbard, individually and as Executor of the Last Will and Testament of Harold A. Hubbard and Nora L. Olich, Judge of Probate within and for the District of Washington

[306 A.2d 707]

No. 158-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

*Burgess & Kilmurry,* Montpelier, for Plaintiffs.

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Defendants.

**Smith, J.** This is an appeal from the judgment order of the Washington County Court in Chancery, made on August 28, 1972. Hearing was held on May 27, 1972. Findings of fact and conclusions of law were made on July 27, 1972, followed by the judgment order dismissing the complaint of the plaintiff on August 17, 1972.

The findings of fact, to which no exception is made or briefed, disclose the following factual situation. The plaintiffs, Freeman G. White and June L. White, husband and wife, live

in Waitsfield, Vermont. The defendant, H. Dwight Hubbard, lives in Northfield, Vermont, and on January 14, 1970, was duly appointed Executor of the Last Will and Testament of Harold A. Hubbard by the Probate Court for the District of Washington. Margaret Hubbard, the wife of Harold A. Hubbard, passed away on April 5, 1969, while Harold A. Hubbard died on December 11, 1969.

At all times material hereto, Harold A. Hubbard and his wife, Margaret, owned a fuel oil distributorship as partners under the name of "H. A. Hubbard". Mr. Hubbard managed the business and made all the decisions relating to its operation. From 1950 to March of 1961, the business was located in Montpelier and Waitsfield. During this period the plaintiff, Freeman G. White, lived in Montpelier, and was employed by Mr. Hubbard as a salesman and truck driver. In March of 1961, Mr. and Mrs. Hubbard sold their oil distributorship in the Montpelier area but continued to operate their distributorship in Waitsfield.

At the time of the sale of the Montpelier distributorship, Mr. Hubbard advised Mr. White that he would like to retain him as an employee in Waitsfield. As an inducement for Mr. White to move to Waitsfield, Mr. Hubbard loaned White $1500.00 to help buy a home in Waitsfield and gave him a raise in pay. Mr. Hubbard also promised, orally, that the business would be sold to White at the end of six years.

On July 1, 1967, the Hubbards entered into a written agreement with the Whites in which the Hubbards sold their fuel distributorship to the Whites for Seventy-five Thousand Dollars ($75,000.00), the fair market price of the business at that time. At that time Mr. White was earning One Hundred and Ten Dollars ($110.00) per week, but since the sale, Mr. White has enjoyed an annual net income of Twenty-five Thousand Dollars ($25,000.00).

On July 1, 1967, the plaintiff paid to Mr. and Mrs. Hubbard the sum of Fifteen Thousand Dollars ($15,000) and signed a series of ten notes, each in the sum of Six Thousand Dollars ($6,000) and dated the 1st day of July, 1967. These notes were payable to Mr. and Mrs. Hubbard and due respectively on the 1st day of July in the years commencing 1968 and terminating in the year 1977, with interest on each at the rate of five per cent per annum.

The payment of the above notes was secured by two mortgages, one on real estate of the Whites and the other being a chattel mortgage. The first two notes mentioned above have been fully paid. Five Thousand Eight Hundred Twenty-one Dollars and Ninety-one Cents ($5,821.91) was paid on the note due on July 1, 1970, prior to the date of death of Mr. Hubbard. No payments on any notes have been made since the death of Mr. Hubbard. The remaining notes are held by the defendant, H. Dwight Hubbard, and he has caused the same to be included in an inventory of the assets of the Estate of Harold A. Hubbard, dated June 22, 1970, and filed in the office of the Probate Court in the District of Washington.

Mr. White claims that Mr. Hubbard told him in the spring of 1961, before his move to Waitsfield, that if Mr. and Mrs. Hubbard died before they sold the business to Mr. White, or if Mr. White had not completed paying for the business after the sale, the business would be his free and clear. No reference to any such agreement is contained in the agreement which was entered into between the parties on July 1, 1967.

The lower court found that Mrs. Hubbard did not take part in any of the claimed oral promises and oral agreement made by Mr. Hubbard to Mr. White, nor was the court able to find that she had ever agreed to any of the promises or agreements which Mr. White claims that Mr. Hubbard made.

While the lower court did find that from 1967 to the date of his death in December, 1969, Mr. Hubbard, on several occasions, told Mr. White and others that he wanted to see to it that Mr. White would have the business free and clear after his death, the court found nothing in Mrs. Hubbard's will to reflect this intent, nor did Mrs. Hubbard ever tell Mr. White, or anyone else, that she wanted White to have the business free and clear after her death, in the event she survived her husband.

The key conclusion by the lower court was that the oral promises made by Mr. Hubbard to Mr. White are not enforceable against the defendant individually or as the Executor of the Last Will and Testament of Harold A. Hubbard.

If a promise had been made by Mr. Hubbard to Mr. White, as Mr. White has claimed, that White should have the business free and clear from encumbrance if Hubbard and his

wife died before they sold the business to White, or if Mr. White had not completed paying for the business after the sale, the business would then go to White, free and clear, such promise could only have been made by Hubbard, as an individual, and not for the husband and wife partnership to whom the business belonged. There is nothing in the evidence or findings to indicate that Mrs. Hubbard agreed to any of the oral promises or agreements made by her husband to White.

> "An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners." 11 V.S.A. § 1201(b).

> "That a partner can ratify an unauthorized partnership agreement is not denied." *Dunbar* v. *Farnum and Wife,* 109 Vt. 313, 322, 196 A. 237, 114 A.L.R. 996 (1937).

But the plaintiff here has failed to offer any proof that whatever promises had been made by Mr. Hubbard to Mr. White had ever been ratified by Mrs. Hubbard.

Further, 12 V.S.A. § 181 provides:

> "An action at law or in equity shall not be brought in the following cases unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof is in writing, signed by the party to be charged therewith or by some person thereunto by him lawfully authorized: . . . .

> (4) An agreement not to be performed within one year from the making thereof; . . . ."

While plaintiff argues that Mr. Hubbard could have provided for performance of the alleged oral promise in his will, and that he could have deceased within a one year period, performance would still have been impossible unless Mrs. Hubbard, the other partner in the business, had ratified the alleged promise and made a similar provision in any will made by her. We concur with the lower court's conclusion that the alleged promise could not have been performed under the Statute of Frauds, above quoted.

■ The court was correct in its application of 12 V.S.A. § 1603 which provides:

"When an executor or administrator is a party, the other party shall not be permitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to acts done or contracts made since the probate of the will, or since the appointment of the administrator, and to meet or explain the testimony of living witnesses produced against him."

The plaintiff argues that the statute has no application for the reason that it was the act of the executor of the estate, H. Dwight Hubbard, in marshalling the assets of the estate, after the probate of the will that precipitated the action. But the plaintiff ignores the fact that it is not the action of the executor, which was proper under the terms of the uncontested will, which is the real issue here involved. The issue is whether or not there was an enforceable contract between the late Harold A. Hubbard and his wife, as partners, and the Whites, and on this issue the sections of the statute above quoted were applicable as the lower court found.

No error is found in the conclusions of law made by the trier below on the facts as found.

The entry is: *Judgment affirmed.*