### In Re Donald Ernest Mears
[ 198 A.2d 27 ]
Special Term, January 1964
Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.
Opinion Filed February 4, 1964

*Eugene V. Clark* for the petitioner.

*R. Marshall Witten,* State's Attorney, Bennington County, for the State.

**Shangraw, J.** This is a petition for a writ of habeas corpus. The petitioner, Donald Harold Mears, seeks to test the legality of the confinement in the House of Correction at Windsor, Vermont, of his minor son, Donald Ernest Mears. The following facts set forth in the petition are not in dispute.

The son, Donald Ernest Mears, a minor, was born on December 25, 1943. On December 2, 1963, he was arraigned before the

Bennington Municipal Court at Bennington, Vermont, on two informations and warrants, both dated November 2, 1963. The first, bearing docket No. 30061, charged him, in count one thereof, with the crime of breaking and entering in the daytime, and, in count two, with the crime of petit larceny.

In the second information and warrant, docket No. 30062, he was charged in count one with breach of peace, and in count two with a further breach of peace.

On December 2, 1963, pleas of guilty were entered on each count of both complaints. A pre-sentence investigation was ordered by the court. Upon consideration thereof, the court, on December 6, 1963 imposed the following sentences to be served in the House of Correction. In Docket No. 30061, on count one, burglary, to serve a minimum of one year and a maximum of three years; on count two, petit larceny, to serve a minimum of four months and a maximum of six months.

At the same time, the court imposed the following sentences to be served in the House of Correction in docket No. 30062. Under count one thereof, breach of peace, a minimum of one year, and a maximum of three years; and under count two, breach of peace, a further minimum sentence of one year, and a maximum of three years. These two sentences were ordered to run concurrently with each other, and also to be served concurrently with the sentences imposed in docket No. 30061.

Pursuant to the above sentences the court issued its mittimi on December 6, 1963. The boy became 20 years old 19 days thereafter. Since that time the son, Donald Ernest Mears, has been confined thereunder in the House of Correction. The father, Donald Harold Mears, by this petition seeks his son's release from imprisonment.

The prosecutions arose out of the following facts. While hunting in Sandgate, Vermont, on November 18, 1963, Mears, and a younger boy, Joseph Wright, age 16, burglarized a camp and took therefrom a number of articles, which is the basis of the burglary and petit larceny counts. The following day the boys were at the town dump and deliberately shot two dogs which happened to be in that area. Each of the boys shot at the dogs. Mears fired first in each instance. By reason of this conduct the prisoner was charged with two counts of breach of peace. His companion, Wright, was also arrested and

charged with all of the offenses preferred against Mears. Their arraignment in court took place on the same date.

The offenses of petit larceny and breach of peace are misdemeanors, and not felonies. The Mears boy was not represented by counsel at the time of his arraignment when pleas of guilty were entered.

Mears was first arraigned on the complaint charging the offenses of breach of peace. Following the pleas of guilty to these charges, the court then took up the burglary and larceny cases. The petitioner claims that he was not appointed guardian ad litem for his son until after pleas had already been entered in the breach of peace cases. Following is the substance of the record before us on this point.

When the court convened on December 2, 1963 the two boys were present with their respective fathers. Prior to any arraignment a general statement was made by the court that the respondents would be afforded the opportunity to obtain an attorney if they so desired. Further, that "Any minor in Court without a parent, guardian or attorney will not be allowed to enter a plea at this time . . ."

The Wright boy was first arraigned on the two breach of peace counts. The court inquired of the boy and his father as to whether they desired counsel, and was informed that they did not. After having read the complaint relating to these counts the court advised the father to confer with his son. After a conference between father and son pleas of guilty were entered. Prior to the arraignment of the Wright boy on the burglary and larceny counts, the court made this statement to his father. "You are again acting as guardian ad litem for your son?" The father answered "Yes." The father and son were advised that the court would assign counsel if desired. This was declined. The court again suggested a conference between father and son. After this had taken place a plea of guilty was entered on each count.

Following the Wright cases, the Mears boy was first arraigned on the breach of peace counts. His father was present and substantially the same pattern was followed by the court as in the Wright cases. Prior to the reading of any of the counts the court made this statement: "Mr. Mears, you heard me explain your rights to

Mr. Wright and you know that you have the right to have counsel. Are you in a position to pay for it?" This was followed by the father's answer, "We do not wish to have counsel." Following the disposition of the breach of peace cases, and prior to arraignment on the burglary and larceny charges the court made this comment, "Now on the other complaint, we appoint you guardian ad litem for your son also."

On each of the two warrants charging the prisoner with the four offenses there appear notations covering the proceedings, such as name, age, offense, plea, sentence, etc., including the following, "Donald H. Mears respondent's father appointed guardian ad litem."

The basis of the petitioner's claim to his son's unlawful imprisonment is contained in his petition, which in part states:

"5) Such imprisonment is unlawful in that at the time of the arraignment and at all times thereafter the Court failed to appoint counsel to represent the prisoner, being a minor charged with the felony of breaking and entering in the daytime, contrary to the provisions of Title 33, Vermont Statutes Annotated, section 678 making such appointment mandatory.

"The Court also failed at all times during the foregoing to appoint a Guardian ad litem for the prisoner with respect to the crimes charged under docket No. 30062, being the first charges under which the prisoner was arraigned on said December 2, 1963 . . ."

"That although the Court appointed the prisoner's father, your petitioner, Donald Harold Mears, Guardian ad litem with respect to the information and warrant docketed No. 30061, which was the second complaint in order of time upon which the prisoner was arraigned on said December 2, the failure of the Court to appoint a Guardian ad litem under docket No. 30062 and counsel under count one of docket No. 30061 makes all proceedings with respect to the prisoner unlawful from the time of his arraignment to and including his continued imprisonment at the time of this application, especially where as in this case the arraignments, pleas, sentencing, and commitment under all counts were handled together and disposed of at the same time by the Court and those carrying out its mandates."

The claims of the petitioner bring into focus 33 V.S.A. §678 relating to the appointment of a guardian *ad litem* for a minor charged with a crime, and right of counsel, which provides:

> "Whenever a minor is charged with a crime in any court and is not represented by counsel the court shall forthwith appoint a guardian ad litem to defend the interests of the minor. Whenever a minor is charged with a felony in any court, he shall be represented by counsel."

A related statutory provision, 13 V.S.A. §1, defines felonies and misdemeanors in the following language: "Offenses which may be punished by death or imprisonment in the state prison are felonies. All other offenses are misdemeanors." Under this section, even though the penalty for an offense may be imprisonment in the state prison, and thereby a felony, the fact that there is an alternate penalty by way of a fine does not reduce the offense to a misdemeanor. *State* v. *Howard,* 108 Vt. 137, 143, 144, 183 Atl. 497. This is likewise the case where, by the authority of 13 V.S.A. §7037, the court in its discretion imposes sentence to the house of correction for the same term to which a respondent over 16 years of age might have been sentenced to the state prison.

From the record we are convinced that Mr. Mears, senior, acted as guardian ad litem for his son during the proceedings, and was so considered by the court and parties. While it would have been better practice on the part of the court to have appointed a guardian ad litem in express terms prior to any arraignment, the record discloses a substantial compliance with the requirements of 33 V.S.A. §678 relative to guardians ad litem. Furthermore, no prejudice is made to appear.

We speak of substantial compliance because of the nature of these proceedings. To prevail on habeas corpus, the petitioner must establish a defect of a kind and magnitude sufficient to oust jurisdiction of the court of conviction. It is to be distinguished from a proceeding for errors in the trial. *In re Moses,* 122 Vt. 36, 40, 163 A.2d 868.

In the Moses case, *supra,* the respondent, a minor, pleaded guilty to a felony charge. This court held that he could, and did, intelligently waive the right of counsel. Subsequently to the handing down

of this opinion, 33 V.S.A. §678 was enacted. This statute requires the trial court to appoint a guardian ad litem for any minor before it, charged with a crime, who is unrepresented by counsel. It also requires that a minor charged with a felony be represented by counsel.

The legislative choice of requiring the appointment of a guardian ad litem, rather than compelling the assignment of counsel, in other than felony cases, is significant. The intent and effect of guardianship is to remove the handicap of infancy, enabling the law to deal with the minor as though he had attained full age. See *Bielawski* v. *Burke,* 121 Vt. 62, 66-8, 141 A.2d 674, 69 A.L.R.2d. 1373. A respondent not under legal disability can unquestionably waive counsel, if he chooses. *In re Moses, supra,* pp. 41 and 42. Presumably the legislature intended to leave it in the power of the guardian ad litem, acting for the minor, to make such a choice where only a misdemeanor is charged, if waiver of counsel appeared to be in the minor's best interests. If the intention of the legislature were otherwise, the careful limitation of the requirement of counsel to felony charges is inexplicable.

This is not to say that these legislative directives are to in any way lessen the courts' traditional concern for the under-aged or incompetent respondents. If the decision of the guardian ad litem to dispense with counsel, or to enter a guilty plea on behalf of his charge seems unwarranted or unwise in the sound judgment of the presiding judge, he should exercise his discretion in the interests of the respondent and order the employment of counsel or the entry of a more appropriate plea, as the case may be.

The power to assign counsel to represent respondents appearing before courts charged with crime is inherent, and at least as broad as the court's criminal jurisdiction. By recent amendment, the legislature has broadened the authority of courts to compensate such assigned counsel at the expense of the State where a respondent is not able to hire an attorney because of lack of means. 13 V.S.A. §6503, now authorizes payment by the State to counsel assigned to any cause where the punishment is imprisonment for six months or more.

This legislation was undoubtedly inspired by the holding in the recent case of *Gideon* v. *Wainwright,* 372 U. S. 335, 83 S.Ct. 792. It was held in that case to be a denial of due process for a state court

to refuse to honor an indigent respondent's request for counsel to be assigned to defend him against a charge involving breaking and entering. Previously, this requirement had been applied only to capital cases. *Hamilton* v. *Alabama,* 368 U. S. 52, 82 S.Ct. 157, 9 L.Ed.2d 799, 7 L.Ed.2d 114. In order that our courts should not be reluctant to carry out the duty to indigent respondents imposed by the Gideon case, *supra,* the compensation provisions for assigned counsel were broadened as described. This, of course, does not mean that counsel cannot be assigned for lesser offenses where the trial court deems it advisable, but merely that compensation for such counsel is available only where the charge involved carries a penalty of six months imprisonment or more. We will have occasion to allude to the authorization of compensation again later in the opinion.

The present case is unlike the factual situation in *Gideon* v. *Wainwright, supra,* in that the trial court here did not refuse the respondent the benefits of counsel. Quite the contrary. The record in the case, as described earlier in the opinion, reveals that the court, not once, but several times, by inquiry, made the respondent and his guardian ad litem aware of his right to have counsel. When asked by the court if he was in a position to pay for counsel, the guardian ad litem replied by saying "We do not wish to have counsel." No claim of inability to have counsel because of indigency was raised before that court, nor is it made an issue here.

The real issue in this case, with respect to the right to counsel under Article 10 of the Vermont Constitution and the sixth Amendment of the United States Constitution, relates to the validity of the waiver of counsel by the guardian ad litem. The right to counsel may be constitutionally waived, if done competently and intelligently. *Johnson* v. *Zerbst,* 304 U. S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Gideon* v. *Wainwright, supra.* If the test of the United States Constitution is met, the provisions of the Vermont Constitution are also satisfied. Compare, *In re Moses, supra,* with *Gideon* v. *Wainwright, supra.*

Since counsel was waived by the guardian ad litem for the respondent after conferring with him, the petitioner's attack necessarily centers on the competency and intelligence of the waiver. According to *Johnson* v. *Zerbst, supra,* the determination of that issue must depend, in each case, upon the particular facts and circumstances

surrounding the case, including the background, experience and conduct of the accused. See also *In re Moses, supra,* at p. 42. In the present case the same essential facts relating to the guardian ad litem would also be pertinent.

This issue was for resolution by the trial court, in the first instance. Its determination will stand unless demonstrated to be so unjustified as to amount to a deprivation of the respondent's constitutional rights, thereby working an ouster of the court's jurisdiction in the matter. In appointing as guardian ad litem the respondent's father, the court followed both a justifiable natural inclination and a statutory preference. See 14 V.S.A. §2641. Also, as has been shown, the court did not allow either the guardian ad litem or the respondent to remain in ignorance about the right of counsel, but directed their attention to it several times. Moreover, during the arraignment, as each separate count in the complaint was read, the respondent was asked if he understood the charge. In each instance he answered "Yes," whereupon the court directed the guardian to confer with him and decide what plea to enter.

The claim is that this careful concern of the court for the rights of the respondent came to naught because there was such deficiency in the intellect and understanding of both the guardian ad litem and the respondent that, together, they lacked the capacity to competently and intelligently waive respondent's right to counsel.

According to the records furnished in this case, the father, the guardian ad litem, about 40 years old, has been regularly employed as a drill press operator for the past 12 years with a concern in Bennington, Vermont. His schooling reached only the sixth grade from which, at the age of 16, he had to leave in order to help out at home. He was variously employed until he entered the armed service. He served in the Navy for about six months, and upon his discharge for medical reasons, was again variously employed in Bennington until locating in his present employment. He has five living children, of whom the respondent is the oldest. Both he and his wife are employed, together having a take-home pay of about $110.00 a week. They have recently purchased a home.

His son, the respondent, according to intelligence tests is of subnormal or "dull-normal" intelligence. He was excused from further

school attendance while in the seventh grade upon reaching the age of 15. He had difficulty making progress in school, and his work habits have since been poor. Last spring the boy purchased a second-hand truck, and went into the business of rubbish collecting, which continued until his confinement on these charges. He has been before the municipal court before. In 1959, in connection with a breaking and entering episode he was brought in as a juvenile and placed on probation in connection with a suspended sentence to Weeks School. In June of 1962 he was before the municipal court and paid a fine in connection with possession of malt beverages as a minor. In August of the same year he was brought in on a charge of breaking and entering in the nighttime and given a suspended sentence of 12 to 18 months in the house of correction; his probation continued until October of 1963. His periods under probation were spent at home since he was not allowed to leave unless accompanied by a parent. This probationary supervision kept him out of trouble during its nearly two-year duration and, according to his father, worked very well.

This information was before the court below by virtue of a pre-sentence investigation. The arraignments took place on December 2. The investigation was ordered at that time, and completed on December 5. Sentences were not imposed until December 6. This interval afforded the father and son time for thought and reflection concerning the pleas entered, and the desirability, if any, of requesting permission to withdraw and change the pleas, or seek legal assistance, which they failed to do. This was not a hurry-up job, and the court in no way encouraged the entry of guilty pleas. The respondent acknowledged to both the investigating state police officer and the probation officer his participation in the offenses with which he was charged.

It is to be presumed that the court was satisfied as to the father's competency to act as guardian. It was justified. Petitioner had not pointed out wherein he, or his son, failed to comprehend the nature of the charges to which pleas were entered. Whatever may have been the shortcomings of his formal education, the father had necessarily acquired a practical familiarity with municipal court criminal proceedings through the several prosecutions of his son, as had the boy himself. Taking this, together with inquiries and explanations

directed to them by the court, we, too, are satisfied that the father and son each intelligently pursued the course of action which they adopted. The waiver satisfied constitutional requirements.

In 33 V.S.A. §678, the legislature has added a further provision. This is the last sentence of the amended section, already quoted, which says, "Whenever a minor is charged with a felony in any court, he shall be represented by counsel." The respondent, through his guardian, waived counsel as to the felony count as well as to all three misdemeanors. The state argues that since it is permissible to waive a constitutional right, it should be at least as acceptable to waive this merely statutory requirement. We do not agree.

The language of the statute indicates that the legislature intended it to be a mandatory requirement, binding the guardian or the court to see that counsel was supplied on the felony charge. Compliance with it is a prerequisite to a valid conviction of a minor on such a charge. If the prisoner's commitment was limited to the mittimus issued in the felony conviction, it would be our duty to discharge him in this proceeding. The failure to appoint counsel, even though waived, is fatal to his imprisonment on that process. We must view the statute in the light of its plain language. The conviction for breaking and entering in the daytime should be vacated. In view of 13 V.S.A. §11, which provides for a possible life sentence on the fourth felony conviction, the vacating of this felony conviction is important.

The petitioner contends that the failure to comply with this statutory provision in connection with the one felony charge so contaminated the whole proceeding that the respondent should be discharged from the three misdemeanor convictions, also. With this we do not agree. The statutory provision specifically limits itself to felony situations, and with the rights of respondents already so amply protected according to constitutional standards with respect to misdemeanors, no policy justification for extending the reach of that provision beyond its plain words appears.

In connection with habeas corpus petitions such as this, from time to time requests are made of this Court to assign counsel at the expense of the State. This we cannot do, since we do not have authority to appropriate or disburse state funds for such a purpose.

The State, by legislation, has provided for the assignment of counsel and their reimbursement in original criminal proceedings. This authority carries through to final appeal, and assures any respondent of professional representation, if he desires it, even though he be indigent. But that obligation undertaken by the State ends with final appeal. *Commonwealth* v. *Myers,* 000 Pa. 000 Super 000, 196 A.2d 209, 210.

 Habeas corpus is not a device to provide an additional appellate review of criminal proceedings. It is essentially a civil proceeding brought to test the legality of restraints on the person whether imposed by courts of chancery, domestic relations, civil or criminal jurisdiction. Vital rights and critical questions may be at issue in this, as in any litigation, and the inherent power of the court to call upon its officers to investigate, prosecute and defend such rights is always available where justice requires. But requiring the State to underwrite employment of counsel for private persons in these situations is not authorized by any statute, and not demanded by any constitutional requirement now existing. *Commonwealth* v. *Myers, supra.*

The petitioner has failed to show that he is entitled to the relief which he seeks. Judgment that Donald Ernest Mears is not illegally restrained of his liberty on the three misdemeanor convictions, and that he be remanded to the custody of the Superintendent of the House of Correction at Windsor, Vermont.

The mittimus which issued on the judgment of conviction for breaking and entering is vacated and of no force and effect, insofar as it relates to said conviction.

*Petition dismissed.*

**Holden, C. J.,** dissenting. I am unable to find that the sentencing court had any greater jurisdictional authority to deal with the misdemeanor offenses than with the felony charges. The present application concerns us with the right to counsel guaranteed by the Federal and State Constitutions. The right is fundamental and its observance is essential to the demands of due process and a fair trial. This means that counsel must be provided for defendants in need of competent legal advice unless the right is competently and in-

telligently relinquished by the defendant. *Gideon* v. *Wainwright,* 372 U. S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799.

"The protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to Counsel, whether there is a proper waiver should be clearly determined by the trial court and it would be fitting and appropriate for that determination to appear upon the record." *Johnson* v. *Zerbst,* 304 U. S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357.

The record unfolded by the present petition shows the defendant remained silent, save for informing the court, in answer to inquiry, that his father was present in court, and that he, the respondent, understood the nature of the charges to which he was called upon to plead.

All of the court's comments and inquiries concerning the right to counsel were addressed to the accused's father. He alone responded to them. And only he, as guardian ad litem, entered the several pleas of guilty.

The instructions concerning the right to counsel were not specifically directed to either the respondent or his father. The advice in this respect was vicariously given by way of reference to what had previously been stated to the parent of a co-defendant: "Mr. Mears, you heard me explain your rights to Mr. Wright and you know you have the right to have counsel. Are you in a position to pay for it?"

To this, the guardian ad litem answered the court: "We do not wish to have counsel." Whereupon, pleas of guilty were announced by the father.

I regard the constitutional right to counsel as personal to the person entitled to its benefit. By the same token it can be waived only by the person who will bear the risk of foregoing its advantage. Here the respondent remained mute.

Silence alone will never constitute a waiver. When it is in derogation of an important right, it will not be inferred from doubtful conduct. *Dunbar* v. *Farnham,* 109 Vt. 313, 322, 196 Atl. 237, 114 A.L.R. 996. When the constitutional right to competent legal assist-

ance is at stake, any presumption of waiver from a silent record is unpermissible. Upon this question, the record must affirmatively show the accused himself was offered legal counsel but he intelligently and understandingly rejected the offer. Anything short of this will not constitute a waiver. *Carnley* v. *Cochran,* 369 U. S. 506, 515, 82 S.Ct. 884, 8 L.Ed.2d 70; *Johnson* v. *Zerbst, supra,* 304 U. S. at 464.

The majority opinion constructs a waiver of the respondent's right to counsel through the voice of a guardian ad litem who was informed only that his charge was entitled to be represented by an attorney. The authority of such a guardian to waive substantial rights of his ward are carefully restricted in civil causes. *Keeler* v. *Fassett,* 21 Vt. 539, 543; *Bank of United States* v. *Ritchie,* 8 Pet. (U. S.) 128, 8 L.Ed. 890, 897; *White* v. *Joyce,* 158 U. S. 128, 15 S.Ct. 788, 39 L.Ed. 921, 927; 27 Am. Jur. Infants §129, p. 848; 43 C.J.S. Infants §111(d) p. 308.

In criminal proceedings against a minor, where the consequences are more serious, the safeguards should afford equivalent protection. The problem is one of first impression with us. It was pointed out in *Reppin* v. *People,* 95 Colo. 192, 210, 34 P.2d 71, 79, that important rights of a minor cannot be waived by either guardian ad litem or attorney in civil proceedings and the law would be remiss if any standard less than this prevailed in criminal causes. See also *McBride* v. *Jacobs,* 101 U. S. App. D.C. 189, 247 F.2d 595, 596; *People* v. *Hardin* (Calif.) 207 C.A.2d 336, 24 Cal. Rptr. 563; 42 C.J.S. Infants, §96, p. 214; annotation 71 A.L.R.2d 1196.

The real import of the majority opinion is that authority of the guardian to waive the minor's right to counsel is derived from 33 V.S.A. §678. This construction, to my mind, operates beyond the letter and against the spirit of the enactment. I find in the statute the legislative purpose to protect the youthful offender from standing alone and unbefriended in court when summoned there to answer for any offense. In addition, there is a mandate that he be represented by counsel in felony prosecutions. But this does not mean that his individual right to be represented by counsel in other causes was delegated to his guardian, to be waived at the election of his adviser. If such is the force and effect of the statute, serious constitutional considerations stand in its way.

Since our decision in the Moses case, the law has changed by force of statute and judicial decision. The distinction between capital and non-capital offenses, for the purpose of determining the right to counsel, has been erased. *Betts* v. *Brady,* 316 U. S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, which previously observed the difference, has been overruled by *Gideon* v. *Wainwright, supra,* 372 U. S. at 339. Within our state jurisdiction, in addition to requiring guardians ad litem for infant respondents, and counsel in felonies, the legislature has removed the categorical difference between crimes punishable in State Prison and the House of Correction by providing counsel for indigent defendants where the crime charge is punishable by imprisonment for six months or more, without regard to whether the offense is a felony or misdemeanor. 13 V.S.A. §6503 (1963).

This statute is kindred in design and purpose to 13 V.S.A. §678. The two enactments should be construed together to achieve their common purpose of affording counsel to .youthful and indigent defendants who are subject to confinement for serious offenses. Confinement in a penal institution for a period of one to three years is serious regardless of the place of confinement or. whether it be classified as a felony or a misdemeanor. In this instance, it is clear that the sentencing court regarded the misdemeanor of equal gravity with the felony count for it imposed equivalent sanctions.

Mr. Justice Clark has stressed this point. "The 14th Amendment requires due process of law for the deprival of 'liberty' just as for the deprival of 'life,' and there cannot constitutionally be a difference in the sanction involved." *Gideon* v. *Wainwright, supra,* 372 U. S. at 349 (concurring opinion).

Also, Mr. Justice Harlan, concurring in *Gideon,* points out, "The special circumstances rule has been formally abandoned in capital cases, and the time has now come when it should be similarly abandoned in non-capital cases, at least as to offenses which, as the one involved here, carry the possibility of a substantial prison sentence." 372 U. S. at 351.

The prisoner did not personally waive his right to counsel. And I am not persuaded that his guardian ad litem could legally do it for him. He had neither legal capacity nor legal knowledge to competently and intelligently relinquish this fundamental right without the minor's affirmative and understanding consent. These essentials

do not appear. Without them due process is not achieved. *Carnley v. Cochran, supra,* 369 U. S. at 515.