## In re Ronald Huard

[ 212 A.2d 640 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed July 23, 1965

*Black, Wilson and Hoff* for petitioner.

*John E. Bernasconi,* State's Attorney, for the State.

**Shangraw, J.** On May 30, 1963, Ronald Huard pleaded guilty in the Barre Municipal Court to the charge of breaking and entering in the nighttime, a violation of 13 V.S.A. §1201. Following a presentence investigation, he was sentenced on June 25, 1963, to serve not less than three years nor more than six years in the State Prison at Windsor, Vermont. 13 V.S.A. §1 defines the offense of which the petitioner was convicted as a felony. He now seeks his release from imprisonment by a petition for a writ of habeas corpus.

This court issued a rule appointing a commissioner to conduct a hearing on the petition with directions to report his findings on the petition. Counsel was appointed to represent the petitioner at this hearing.

The petitioner alleges generally that he is confined without law or right and that his imprisonment is illegal. In support of this claim he states that he was denied the assistance of counsel, and that he did not intelligently waive such right.

Evidence was introduced not only in connection with the questions

of a denial and waiver of counsel, but also in connection with the legality of petitioner's arrest.

Following the hearing, findings of fact were filed in this Court by the commissioner. A verbatim transcript of the hearing was also made and filed by an official stenographer. It is upon these findings that the petitioner claims that his confinement is illegal and that he is being detained without due process of law.

The alleged offense occurred in Barre, Vermont, on May 26, 1963. On May 30, 1963, petitioner's wife while at Shelburne, Vermont, called the Barre Police Station at approximately 5:30 A.M. notifying the office that her husband was in Shelburne, and would return to the house where she was then staying, at about 8:00 A.M. This call was received by Ronald Geake, a police officer of the City of Barre. Officer Geake immediately notified Chief of Police, Floyd Chandler, who in turn called Mr. Bernasconi, the State's Attorney of Washington County regarding the issuance of warrants.

Later Mr. Chandler was called back by the state's attorney and told that the warrants (meaning the informations) were ready. These came into possession of Chief Chandler by eight o'clock in the morning. It appears that two informations were issued, one against the petitioner, and the other against his nephew, Martin Miller. The authority for the issuance of these informations is found in 13 V.S.A. §5652, which provides:

"Crimes not punishable by death or by imprisonment in the state prison for life may be prosecuted by a state's attorney by information."

Following the receipt of the call from Mrs. Huard, officer Geake accompanied by police officer William D. Nuissl left Barre and proceeded to Shelburne. On the way to Shelburne these officers stopped in Burlington at the district office of the state police where they were met by an unknown state trooper who accompanied them to the house where Mrs. Huard was staying. The petitioner and Miller were arrested at the house about 8:30 A.M. The commissioner found that the information was issued against petitioner by the State's Attorney prior to 8 o'clock and prior to the arrest of Huard.

At the time of the arrest of Huard, neither officer had an information and warrant in his possession, nor had the warrant for the arrest of the petitioner been signed by Judge McLeod. Chief Chandler testified that he called the state police and informed them that the warrants (informations) were available. Officer Nuissl testified that the

unknown state trooper "told me that he had received a radio message that the warrants had been issued." Officer Geake and officer Nuissl each claimed that they had received word from the state trooper that warrants had been issued before the arrests were made. As to this point the commissioner found that "they may have received word about 8 A.M. while they were at Shelburne."

Mr. Huard and Mr. Miller returned to Barre, Vermont, with the two Barre police officers, arriving there at 9:30 or 10:00 A.M. Mr. Huard was arraigned shortly thereafter. The Huard warrant was signed by Judge McLeod about nine o'clock.

■ The petitioner first urges that his arrest without a warrant was a violation of due process and the rights guaranteed to him by both the state and federal constitutions. More specifically, he first urges that the two Barre officers were not clothed with authority to make a valid arrest, and, secondly, that at the time of petitioner's arrest the officers had no reasonable cause to believe that he had committed the felony complained of.

Each of the two officers were deputy sheriffs. The return on the warrant was made by officer Ronald Geake as deputy sheriff. 24 V.S.A. §293 provides that "A sheriff so commissioned and sworn shall serve and execute lawful writs, warrants and processes directed to him. . . " Under 24 V.S.A. §307 a deputy sheriff is appointed by the sheriff. He must take an oath, and his deputation and oath must be filed for record in the office of County Clerk. By 24 V.S.A. §309 "he may, and when required, shall perform any official duty which may be required of the sheriff." Returns of his acts and doings shall be signed by him as deputy sheriff, and his official acts shall be deemed to be the acts of the sheriff. *Gross* v. *Gates,* 109 Vt. 156, 161, 194 Atl. 465. Petitioner's claim that officer Geake was without authority to make the arrest is without merit. The return on the warrant was made by him as deputy sheriff. As a deputy sheriff he had state wide jurisdiction to make the arrest.

■ The fact that the officers had no warrant in their possession at the time of the arrest did not bar a lawful arrest of the petitioner. An officer may arrest without a warrant a person whom he has reasonable cause to believe has committed a felony. *State* v. *Taylor and O'Donald,* 70 Vt. 1, 39 Atl. 447; *Usher v. Severance,* 86 Vt. 523, 528, 86 Atl. 741. A sheriff is justified, without a warrant, in pursuing and arresting one whom he has reasonable cause to suspect of the commission of a felony. *State v. Shaw,* 73 Vt. 149, 169, 50 Atl. 863; *Lancour* v. *Herald & Globe Ass'n* 111 Vt. 371, 380, 17 A.2d 253.

It becomes manifest from the findings and transcript that the police department of Barre believed the petitioner to be a prime suspect of the offense of which he was charged. The action of the officers in making his arrest was founded on reasonable cause to believe that he had committed the felony of which he was convicted. Petitioner's claim that his arrest was illegal is without merit.

In support of his petition, the petitioner urges that he was denied the right of counsel guaranteed to him by the Constitution of the United States, as well as that of the State of Vermont. The Sixth Amendment to the United States Constitution in part provides: "In all criminal presecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." Likewise, Article 10 of the Vermont Constitution guarantees "That in all prosecutions for criminal offenses, a person hath a right to be heard by himself and his counsel."

The respondent was arrested on May 30, 1963, and arraigned before Judge Arthur N. McLeod on the same day. Petitioner entered a plea of guilty without benefit of counsel. On the issue of a denial and waiver of counsel, we quote from the findings of the commissioner.

### "EVIDENCE RELATING TO THE DENIAL OF COUNSEL

Petitioner Huard states that when the officers came to the house in Shelburne, he asked for permission to call an attorney and which permission was denied him by Officers Geake and Nuissl. He stated that they told him he could call his attorney when they got around to letting him. This is first denied by Officer Geake, who states that he heard Huard ask his wife if he would call a lawyer. Later in cross examination, he stated that Huard possibly could have asked for a lawyer, he did not recall specifically. Huard stated that on the way back to Barre with this officer, he again asked for an attorney and was told to shut up, and Geake says Huard "might have."

Officer Nuissl denied that Huard asked for a lawyer but says he told him if he was going to plead not guilty he better have a lawyer. Huard says he asked again for a lawyer after arrival and while in the interrogation room, and was refused. Officer Geake's testimony is directly contradictory.

I find that from the time of arrest in Shelburne until his appearance in Court, Huard was given no opportunity to contact a lawyer.

When Huard was arraigned, he stated that the judge did not ask him if he desired counsel and that at that time he did not request counsel. He stated that after the arraignment and the confession in

the county jail and up to that time, no one asked him whether or not he wanted a lawyer and no one told him that he could have a lawyer, and that he had been refused so many times that he quit asking. His testimony is contradicted by Officer Geake, who stated that the Judge asked him if he wanted a lawyer and that Huard replied in the negative. Judge McLeod stated that he did advise the petitioner of his right to counsel, but does not remember whether he asked petitioner to have counsel assigned, but did assign counsel later on. Officer Nuissl, also in the Courtroom at the time of arraignment, did not recall if the Judge made any statements relative to an attorney for Huard. The only other witness in the Courtroom at the time, who has not testified, was Captain Mooney.

We are handicapped by the absence of an official transcript of record of this arraignment as well as a failure of the Court to require an application for counsel in petition form as required by County Court Rule 45 (Title 12, App. II, R. 45) See Title 13 §§ 6503, 6506).

We also find that Sec. 6551, Title 13, was not complied with, requiring that a copy of the information be furnished the respondent and allowing him 24 hours in which to plead.

I find that at the time of Huard's arraignment, he was an indigent person. He testified that he had $30.00 on his person when arrested, which was taken from him by the officers. Obviously, if the State later paid Attorney Stone for representation, it must have appeared that he had no funds or means of hiring counsel.

I find that at the time of arraignment and plea, he was not represented by counsel.

I find that Huard was advised by the Judge that he had a right to counsel, but I am unable to find that the court offered to assign counsel to him at that time.

I find that on the day following arraignment, May 31, 1963, Attorney Stone saw Huard at Huard's request, called Judge McLeod and on that day, the following entry was made on the Information and Warrant: "5/31/63 Appointed J. Frederick Stone to be attorney for Huard."

I find that this appointment was made to permit Stone to be paid by the State and was not counsel furnished on the Court's initiative.

## INTELLIGENT WAIVER OF RIGHT TO COUNSEL

The evidence relating to whether or not Huard *intelligently* waived counsel at his *arraignment* is confusing. Officer Geake's testimony is at direct variance with Huard's. Judge McLeod says he

read the information, advised him of his right to counsel, questioned him as to his financial ability, accepted a plea, fixed bail and ordered a pre-sentence investigation.

I find, in view of all the circumstances attending the arrest, interrogation, and arraignment proceedings, no convincing evidence that Huard intelligently waived the right to be represented by counsel at the proceedings held on May 30, 1963."

■ Under the state and federal constitutions petitioner was entitled to counsel unless he knowingly and intelligently waived such right. *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461; *Gideon* v. *Wainwright,* 372 U.S. 335, 344, 9 L. Ed. 2d 799, 805, 83 S. Ct. 792. The right to counsel may be constitutionally waived, if done, competently and intelligently. *In re Mears,* 124 Vt. 131, 138, 198 A.2d 27. Silence alone will never constitute a waiver. When it is in derogation of an important right it will not be inferred from doubtful conduct. *In re Mears,* supra, p. 143, citing *Dunbar* v. *Farnum,* 109 Vt. 313, 322, 196 Atl. 237, 114 A. L. R. 996. On this point the courts indulge every reasonable presumption against waiver of fundamental constitutional rights. *Aetna Ins. Co.* v. *Kennedy,* 301 U.S. 389, 81 L. Ed. 1177, 57 S. Ct. 809; *Johnson v. Zerbst,* supra.

The state concedes that the petitioner was entitled to counsel, if he so desired, at the time he pleaded guilty. It contends that he intelligently waived the benefit of such representation. The findings and record are contrary to the state's claim. As stated in *Commonwealth ex rel. Johnson* v. *Maroney,* 416 Pa. 451, 453-454, 206 A.2d 322, 323 ". . . waiver of counsel may not be found from a mere plea of guilty, or from the appearance of defendant without counsel, or from the failure to request counsel, or from a record which is completely silent on this point."

The findings of the commissioner make it manifest that the petitioner desired counsel and was afforded no opportunity to contact a lawyer. While there is conflicting evidence as to waiver, considering the record as a whole, the evidence supports the findings and conclusions of the commissioner that the petitioner did not intelligently waive his important and fundamental right to counsel. This renders his restraint unlawful. *Gideon* v. *Wainwright,* supra.

The writ of habeas corpus can reach behind prison walls and iron bars, but it is not a static, narrow, formalistic remedy; its scope also includes the protection of individuals against erosion of their right to

be free from wrongful restraints upon their liberty. *Jones* v. *Cunningham,* 371 U.S. 236, 9 L. Ed. 2d 285, 83 S. Ct. 373, 92 A.L.R. 2d 675.

Here, petitioner repeatedly indicated his desire for counsel, and as stated in the findings of the commissioner, "was given no opportunity to contact a lawyer." Confessions were obtained before and after his arraignment, and before he was contacted by an attorney. Without benefit of counsel he certainly was inadequately prepared to meet the serious challenge presented by the charges made against him at time of arraignment, and before he was contacted by an attorney. His plea of guilty was entered at a stage when legal aid and advice was most critical. When the attorney entered the arena the die had been cast. Furthermore, petitioner was not furnished a copy of the information, or advised that he was not required to plead to the information until twenty-four hours after being furnished with a copy of the same. 13 V.S.A. §6551. All of these factors militate so strongly against the state that we conclude that the petitioner's constitutional and statutory rights were not properly safeguarded.

During the course of the hearing before the commissioner the state on cross examination of the petitioner attempted to show that he had been previously convicted of crimes involving moral turpitude. Its purpose was twofold; first, that is was offered to affect the credibility of the petitioner; secondly, that petitioner was familiar with court procedure and knew of his rights to assigned counsel. Upon such cross examination petitioner was asked, "Had you ever been convicted of a felony." The specific offenses were not called to petitioner's attention. Objection was made by petitioner's counsel. The objection was sustained by the commissioner.

The statute, 12 V.S.A. §1608, as amended in 1959 by public act No. 250 under which the state's attorney attempted to elicit the foregoing information, in part reads: "The conviction of a crime involving moral turpitude within fifteen years shall be the only crime admissible in evidence given to affect the credibility of the witness."

It has long been the law in this state that evidence of a crime involving moral turpitude may be received in evidence to affect the credibility of a witness. Such evidence is admissible under the above statute if the conviction involving moral turpitude occurs within fifteen years. *State* v. *Russ,* 122 Vt. 236, 237, 167 A.2d 528. Here the question was too broad in scope and without limitation as to time. The commissioner ruled properly in excluding this evidence as the question was framed.

*It is adjudged that said Ronald Huard is illegally restrained in the Vermont State Prison, at Windsor, Vermont, and he is discharged therefrom.*