# State of Vermont v. Andre LeBlanc

[540 A.2d 1037]

No. 85-206

Present: Allen, C.J., Peck, Dooley and Mahady, JJ., and Keyser, J. (Ret.), Specially Assigned.

Opinion Filed December 24, 1987

*Kurt Hughes*, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Following a bench trial, defendant was convicted of two motor vehicle violations, operating a motor vehicle while his license to do so was suspended in violation of 23 V.S.A. § 674, and operating a motor vehicle on a highway while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2). On appeal, defendant argues that his arrest by a Colchester police officer in Winooski for violations that occurred in Winooski was unlawful, because the arresting officer was outside his territorial jurisdiction at the time he observed the violations and made the arrest. We agree and reverse.

The following facts were presented by the State and stipulated to by counsel and defendant at his trial. An officer of the Colchester Police Department was traveling south on Route 7 in Winooski. He observed a motorcycle also traveling south in front of his police cruiser, weaving across the double centerline of the road. After following the motorcycle for approximately two blocks, the officer activated the blue lights on his cruiser and stopped the motorcycle. He noticed that the motorcycle had no rear registration plate. When asked to identify himself, defendant first gave a fictitious name, then identified himself as Andre LeBlanc. A motor vehicle check indicated his license

had been suspended. The officer detected a moderate odor of alcohol on defendant's breath and observed that defendant's eyes were bloodshot and watery. He requested another officer from the Colchester Police Department to assist him by having defendant perform some manual dexterity tests. Defendant refused. He was then arrested and returned to Colchester for processing. He was advised of his *Miranda* rights and waived them. Defendant said he had consumed approximately six beers in the past six hours. He submitted to a breath test, which indicated that the alcohol content of his blood was in excess of .10 percent.

Defendant moved to suppress all the evidence, including the breath test, obtained by the officers at the time of his stop and arrest, on the grounds that the officers did not have territorial jurisdiction to stop defendant or arrest him for driving while intoxicated. The court denied his motion, concluding that the officer "acted with full authority in stopping and arresting the defendant in the City of Winooski."

Generally peace officers may arrest without a warrant only in their territorial jurisdictions unless the statutes otherwise provide, and, as we recently held, a constable has no power beyond that of a private citizen outside the town where he or she was elected. *State* v. *Hart*, 149 Vt. 104, 106, 539 A.2d 551, 554 (1987).

This was the common law rule, *Commonwealth* v. *Grise*, 398 Mass. 247, 249, 496 N.E.2d 162, 163 (1986), and controls unless modified by statute or case law. 1 V.S.A. § 271; *E.B. & A.C. Whiting Co.* v. *City of Burlington*, 106 Vt. 446, 458, 175 A. 35, 41 (1934). The State argues that the territorial limitation on the powers of peace officers has been modified by statutes and case law in Vermont. It relies on a motor vehicle statute, 23 V.S.A. § 1013, which provides: "Enforcement officers may make arrests for violations of this title . . . ." 23 V.S.A. § 4(11) defines enforcement officers to include "sheriffs, deputy sheriffs, constables, police officers, state's attorneys, motor vehicle inspectors, state game wardens and state police . . . ." The State contends that these statutes grant municipal police officers the power to arrest for violations of Title 23 anywhere in the state. Thus, according to the State, a Colchester police officer has jurisdiction to arrest for traffic violations not only in Colchester, but statewide.

Such a departure from the common law rule of limited jurisdiction is not plainly expressed in the statute. A holding that the motor vehicle statute grants law enforcement officers power to arrest for violations only within their own jurisdictions is more con-

sistent with the common law. "The common law is changed by statute only if the statute overturns the common law in clear or unambiguous language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter." *Langle* v. *Kurkul*, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986) (citation omitted). None of the indicators of change is present here. We decline to infer an expansion of the common law rule on officers' power to make warrantless arrests, in the absence of explicit statutory language.

The State argues from *In re Huard*, 125 Vt. 189, 191-92, 212 A.2d 640, 642-43 (1965), which assumes that sheriffs have statewide jurisdiction for making arrests. Since police officers within the state have the same power as sheriffs in criminal matters under 24 V.S.A. § 1935, the State concludes that municipal police officers also have statewide power to make arrests. *Huard* involved an arrest without warrant in Chittenden County by a Washington County deputy sheriff, for an offense committed in Washington County. The Court determined that the deputy had probable cause to believe the petitioner had committed a felony. It concluded, without discussion or citation to any authority, that since the deputy had the same authority as the sheriff, he had statewide jurisdiction to make the arrest. *Id.* The authority of a sheriff to arrest outside of his jurisdiction was assumed, not decided, and the statement, as well as a similar statement in *State* v. *Bushey*, 148 Vt. 197, 200, 531 A.2d 902, 905 (1987), can only be regarded as mere dictum. This dictum is erroneous, and we decline to follow it. We adhere instead to the common law rule limiting the arrest power of peace officers to their own jurisdictions.

We noted in *Hart*, 149 Vt. at 106 n.1, 539 A.2d at 553 n.1, that the Criminal Rules allow law enforcement officers, including sheriffs, constables and municipal police officers, to arrest without a warrant for crimes committed in their presence. V.R.Cr.P. 3(a), 54(c)(6). We concluded that the rules did not extend the arrest power of constables beyond the town where they were elected, finding that while this Court may promulgate rules, it does not have the authority to abridge the substantive right of Vermonters to be free from unlawful stops and seizures of their persons, provided by Chapter I, Article 11 of the Vermont Constitution. *Id.*

The State next argues that even if *Huard* was wrongly decided the legislature has shown its intent to rely on and expand its assumption that sheriffs have statewide authority to arrest by amending 24 V.S.A. § 1935 to give police officers the same powers

as sheriffs. In the State's view, the amendment was made to give municipal police the power to arrest statewide. It argues that we must presume the amendment to the statute was made in light of *Huard*, citing *State* v. *Anair*, 123 Vt. 80, 81, 181 A.2d 61, 62-63 (1962). *Anair* involved legislation on precisely the issue decided in a previous case before this Court. Debate on the legislation began "within a few weeks" of the prior decision. *Id.* Given the identity of issues in the prior case and the subsequent legislation, and the speed with which the legislature took up the issue of the prior decision, this Court stated, "it must be presumed that the changes made in the law were made in light of the relevant decisions of this Court." *Id.*

Unlike *Anair*, eight years passed between the decision in *Huard* and the legislature's action on 24 V.S.A. § 1935. In the interim, the legislature modified the statute to equate the authority of local police to that of constables. 1971, No. 194 (Adj. Sess.), § 2. It would be difficult to infer from this amendment that the legislature intended to expand the territorial jurisdiction of local police officers inasmuch as a constable's warrantless arrest power is confined to the town in which he was elected. *Hart*, 149 Vt. at 106, 539 A.2d at 552-53. In view of this history, no presumption may be drawn from the 1973 amendment substituting sheriffs for constables.

Further reason to question the legislature's intent to change the common law rule can be found in its failure to amend 20 V.S.A. § 1914, which defines the authority of state police officers and provides in pertinent part as follows:

> The commissioner of public safety and the state police shall be peace officers and shall have the same powers with respect to criminal matters and the enforcement of the law relating thereto as sheriffs, constables, and local police have in their respective jurisdictions . . . .

The language recognizes that the powers of sheriffs, constables and local police are confined to their respective jurisdictions.

The view here expressed is consistent with the interpretation of 23 V.S.A. § 4(12) (defining fresh pursuit) in *State* v. *Baldwin*, 140 Vt. 501, 438 A.2d 1135 (1981). There, this Court, relying upon the statutory definition, upheld the authority of a police officer to pursue a drunk driving suspect into another municipality and there stop his vehicle. The statutory power of fresh pursuit as in-

terpreted in *Baldwin* would have been unnecessary if the police officer had the authority to arrest outside of his jurisdiction.

The dissent contends that public policy would be better served by according local police the power to make warrantless arrests statewide. However, there are also sound public policy considerations that militate against expanding the arrest power of local police beyond their jurisdictions. For example, there is the concern over the loss of democratic control of the actions of police if they may arrest outside the jurisdictions where they are employed. Colchester police are not answerable to the people of Winooski for arrests they make there.

While this Court has and will change the common law to meet changing needs of the people of this state, see, e.g., *Hay* v. *Medical Center Hospital*, 145 Vt. 533, 544, 496 A.2d 939, 945 (1985), the issue here presented is better left for legislative resolution. We do not want to get into the business of weighing the conflicting policy considerations here. "A case for judicial restraint, the separation of powers and respect for our sister branch of government [the legislature] clearly appears." *Langle* v. *Kurkul*, 146 Vt. at 530-31, 510 A.2d at 1312 (Peck, J., concurring).

Thus, we conclude that because the officer was outside his territorial jurisdiction when he stopped and arrested defendant, he had no power beyond that of a private citizen and the arrest was unlawful. The arrest cannot be justified as a citizen's arrest for the reasons asserted in *Hart*, 149 Vt. at 108, 539 A.2d at 554.

Because the stop and arrest were unlawful, the evidence obtained as a result should have been suppressed. *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963); *State* v. *Emilo*, 144 Vt. 477, 484, 479 A.2d 169, 173 (1984).

*Reversed.*

**Mahady, J.,** dissenting. I respectfully dissent from the holding of the majority that a municipal law enforcement officer has no authority to effect a motor vehicle arrest outside the territorial jurisdiction of his municipality.

The legislature has specifically provided that "[w]ithin the limits of the state, police officers shall have the same powers as sheriffs in criminal matters . . . ." 24 V.S.A. § 1935. Twenty-two years ago, this Court held that a sheriff "had state wide jurisdiction to make [an] arrest." *In re Huard*, 125 Vt. 189, 191, 212 A.2d 640, 643 (1965). Within the past year, this Court noted that "the existence of 24 V.S.A. § 1935, giving police officers the same pow-

ers as sheriffs in criminal matters . . . effectively settles the matter . . . . A sheriff, or his deputy, has state-wide jurisdiction to make arrests." *State* v. *Bushey*, 148 Vt. 197, 200, 531 A.2d 902, 905 (1987).

In 1972, and again in 1973, the legislature amended 24 V.S.A. § 1935. It must be presumed that the legislature acts with knowledge of the relevant decisions of this Court. *State* v. *Anair*, 123 Vt. 80, 81, 181 A.2d 61, 63 (1962). Having twice made amendments to § 1935 after our holding in *Huard*, it is only too clear that it is the intent of the legislature to provide statewide jurisdiction for municipal police officers as well as for sheriffs. Compare *State* v. *Hart*, 149 Vt. 104, 106, 539 A.2d 551, 552 (1987) (There is "no express statutory authority in Vermont for a constable to make a warrantless arrest outside of the town in which the constable was elected, nor is there implicit statutory authority for such an expansion of a constable's jurisdiction.").

The language of the statute itself reinforces this conclusion. In construing a statute we must, where possible, give effect to every word, clause and sentence. *State* v. *Tierney*, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980). Therefore effect must be given to the introductory clause of § 1935. That clause, "[w]ithin the limits of the state," is clear on its face. Accordingly, its plain meaning must be given effect. See *Hill* v. *Conway*, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983).

The legislature has also adopted a statewide policy "to improve the quality of law enforcement and citizen protection by maintaining a uniform standard of recruit and in-service training for law-enforcement officers . . . ." 20 V.S.A. § 2351. As a matter of sound public policy this Court should encourage such statewide standardization and should encourage interagency cooperation among law enforcement agencies. In doing so, we will improve both public safety and concern for individual liberties through increased law enforcement professionalism.

When faced with situations such as that presented by Route 7, running within a short distance through Burlington, South Burlington and Shelburne, or such as that presented by Route 15, running within a short distance through Winooski, Colchester and Essex, I do not believe for a moment that the legislature intended to place the kind of needless and artificial restraints on law enforcement as the Court imposes today.

This Court should not presume that the legislature intends "absurd or irrational results." *State* v. *Rice*, 145 Vt. 25, 34, 483 A.2d 248, 253 (1984). The majority would require a uniformed Colchester police officer in a marked cruiser, upon observing an obviously impaired driver weaving on the highways of Winooski, posing a serious threat to the life and limb of innocent citizens, to merely follow the vehicle and radio for the assistance of a Winooski officer. (What if the officer had happened upon an armed robbery in progress? A rape in progress? What is to be the fate of the common county-wide, interagency efforts to combat drunk driving?) The rule adopted in this case will produce such irrational consequences. That was not the intent of the legislature.

Respect for our sister branch of government, the legislature, requires this Court to give meaning and effect to its enactments. See *In re A.C.*, 144 Vt. 37, 43, 470 A.2d 1191, 1194 (1984). Hypertechnical obfuscation of clear legislative intent denies that respect.

I would affirm. I am authorized to say that Justice Peck joins in this dissent.